(No. 13943.—Judgment affirmed.)

BEN A. STEWART, Appellee, *vs.* DAVID BRADY, Appellant.

*Opinion filed December 22, 1921.*

1. CONSTITUTIONAL LAW—*purpose of constitutional provision that act shall embrace only one subject.* The constitutional provision that no act shall embrace more than one subject does not mean that it shall contain only one provision, but the purpose of the restriction is to prevent the joining in one act of incongruous and unrelated matters, and an act may contain any number of provisions which tend to further its purpose.

2. SAME—*title of Securities act does not embrace different subjects.* Neither the title of the Illinois Securities act of 1919 nor the act itself is repugnant to the constitutional provision against including more than one subject within an act, as the penalties imposed by the act are directly related to carrying it into effect, and the repeal of the former statute cannot be said to be a separate subject, as the repeal of all conflicting laws follows from the adoption of the new act.

3. SAME—*Securities act is an exercise of police power.* The authority of the legislature to adopt the Illinois Securities act is found in the police power for the promotion of the general welfare by the prevention of frauds, and the evil attempted to be regulated is a subject upon which the legislature has the right to act.

4. SAME—*legislature must determine whether an evil exists and adopt the means for its prevention.* It is a question for legislative determination whether an evil exists and what means shall be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation.

5. SAME—*objects of legislation may be classified for purpose intended without including all the evils to be remedied.* Classification of the objects of legislation is not required to be scientific, logical or consistent if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary, and the classification need not be so broad as to include all the evils which might by possibility be brought within its terms.

6. SAME—*when, only, may the courts interfere with legislative classification.* A legislative classification must be palpably arbitrary to authorize a judicial review of it, and it cannot be disturbed by the courts unless they can see clearly that there is no fair reason for the application of the law to the particular individuals while others of the same class are excluded.

7. SAME—*legislature has authority to determine a reasonable basis for statutory classification.* The legislature has authority to determine upon what differences a distinction may be made for the purpose of statutory classification between objects otherwise having resemblance, though such power cannot be arbitrarily exercised and the distinction must have a reasonable basis.

8. SAME—*party assailing statutory classification has burden of showing that it is arbitrary.* One who assails a classification made in a statute must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary.

9. SAME—*when a classification is not arbitrary.* A distinction in legislation is not arbitrary if any state of facts can reasonably be conceived that will sustain it, and the existence of that state of facts at the time the law was enacted must be assumed; and it makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength, as it is not within the competency of the courts to arbitrate in such contrariety.

10. SAME—*the right to engage in a lawful business is subject to police power.* While the privilege of engaging in a lawful business is the right of every individual, it is subject to the police power and must be exercised in accordance with the requirements of statutes passed in the exercise of that power for the protection of the public.

11. SECURITIES—*purpose of the Securities act.* The purpose of the Illinois Securities act is not only to furnish information to protect credulity and ignorance from deception and imposition and prevent fraudulent and deceitful sales of securities, but also to assure credit and freedom of commerce in such securities as, because of their character, the place and manner of their sale or the character of the seller, are not subject to the practices of deception and fraud to such a degree as in the judgment of the legislature requires legislation for the protection of purchasers.

12. SAME—*Securities act does not provide unreasonable classification nor confer special privileges.* The Illinois Securities act of 1919, in making distinction between securities listed on certain stock exchanges and in newspaper market reports and those not so listed, does not establish an arbitrary or unreasonable classification nor confer any special privileges on the exchanges enumerated nor upon the issuers or dealers in the securities listed, as the fraud

at which the act is aimed is fraud in regard to the character of the securities themselves rather than fraud in their sale, and any classification which has a just relation to the character or value of the security itself is within the power of the legislature.

13. SAME—*paragraph 3 of section 5 of Securities act does not grant special privileges in violation of constitution.* Paragraph 3 of section 5 of the Illinois Securities act, exempting securities sold by certain corporations or associations mentioned, does not grant to such corporations a special privilege denied to others, in violation of section 22 of article 4 of the constitution, but the classification of such corporations is based upon a reasonable distinction, as the method of their organization and supervision protects the public in dealing with them.

14. SAME—*classification of securities in class "C" of the Securities act is reasonable.* The distinction between securities listed in class "C" of the Illinois Securities act and those included in class "D" is based upon a reasonable difference, as the substantial net earnings for a period of two years required to be shown by securities in class "C" entitle such securities to more confidence than those represented by an enterprise which has never been in operation and whose capacity to earn profits must be accepted on faith or upon such evidence as may be accessible.

15. SAME—*the Securities act may classify securities as "speculative."* The requirement of the Illinois Securities act that statements filed in regard to class "D" securities must contain the statement, "These are speculative securities," is not unreasonable, as the securities included in class "D" involve a risk of loss greater than the ordinary investment, and, the classification being proper, it is proper to require the securities to be labeled as speculative.

16. SAME—*allegation that securities sold were of class "D" is sufficient in suit under section 37 of Securities act.* In a declaration under section 37 of the Illinois Securities act it is sufficient to allege that the securities sold in violation of the statute were class "D" securities, as the defendant is presumed to be acquainted with the statute; and such an allegation furnishes all the facts necessary to inform either the defendant or the court of the character of the securities involved and to enable the defendant to know the nature of the cause of action and to prepare his defense.

17. SAME—*statements under section 9 of Securities act are to be filed by issuer of the securities—pleading.* The statements and documents required to be filed under section 9 of the Illinois Securities act, relating to class "D" securities, must be made by the issuer of the securities, and in a suit under section 37 against an agent for selling unqualified securities it is sufficient for the declaration to allege that the corporation failed to file the statements

·and inventories required by the statute; but the statements required under section 14 are personal statements of the dealer, owner or agent desiring to sell the securities after their qualification by the issuer, and these statements must be filed by the vendor.

18. SAME—*section 37 of the Securities act does not authorize recovery of interest by a purchaser of securities.* The recovery authorized by section 37 of the Illinois Securities act in an action by a purchaser of securities sold in violation of the act is the amount paid for the securities and reasonable attorney's fees, and no provision is made for the recovery of interest.

19. ACTIONS AND DEFENSES—*when action under statute may be in assumpsit.* An action of assumpsit will lie for money had and received for the use of the plaintiff, wherever, by reason of a contract relation, the defendant has obtained possession of money which in justice he ought to refund, and assumpsit may be maintained for money due to the plaintiff under the provisions of a statute which does not restrict him to any other remedy.

DUNCAN, J., dissenting.

APPEAL from the County Court of Rock Island county; the Hon. NELS A. LARSON, Judge, presiding.

KENWORTHY, DIETZ, SHALLBERG, HARPER & SINNETT, (PAM & HURD, of counsel,) for appellant.

H. A. WELD, for appellee.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ben A. Stewart brought an action in the county court of Rock Island county against David Brady, who filed a demurrer to the declaration, which was overruled. The defendant electing to stand by his demurrer, the court assessed the damages and rendered judgment against him for the sum of $313.33, from which he appealed to this court on the ground that the constitutionality of the Illinois Securities law is involved. A judgment was rendered affirming the judgment, but at the October term a petition for

rehearing was presented and it was thought desirable that there should be a re-argument of the constitutional questions involved. The rehearing was allowed and the Attorney General was requested to file a brief on those questions. He has done so, and his brief and the briefs which have been filed by both the parties present very fully the questions arising on the record.

The declaration, consisting of two counts, charged that the appellant was an officer, director, solicitor and agent of the American Chief Oil Company, which was a voluntary unincorporated joint stock association which issued certificates of beneficial interest in the company; that such certificates were class "D" securities under the provisions of the Illinois Securities law, and the American Chief Oil Company had not complied with the requirements, or any of them, of that law relating to the sale of class "D" securities, and had not filed any statement or inventory, or copy thereof, in the office of the Secretary of State, yet the appellant, well knowing the premises, solicited the appellee to buy twenty shares of beneficial interest in the American Chief Oil Company and offered to sell the appellee such shares, and then and there did sell the appellee said twenty shares and received from him $200 for the purchase price and caused a certificate for said shares to be executed and delivered to the appellee. The declaration averred that the sale was unlawful and void; that the appellee tendered the securities back to the appellant and on filing his declaration tendered the same to him in open court, and the appellee incurred and became liable to pay attorney's fees in the sum of $200 in the bringing and prosecuting of his suit, for which sums he prayed judgment.

The action was brought under section 37 of the Securities law, which declares every sale and contract of sale made in violation of any of the provisions of the act void, and the seller of the securities so sold, and each and every solicitor, agent or broker for such seller who should have know-

ingly performed any act or in any way furthered such sale, jointly and severally liable, upon the tender to the seller, or in court, of the securities sold, to the purchaser for the amount paid, together with his reasonable attorney's fees, in any action brought to recover such amount.

The main contention of the appellant is that the act is unconstitutional. It was passed in 1919, (Laws of 1919, p. 353,) and was a substitute for a previous statute which it repealed. (Laws of 1917, p. 294.) Its title is, "An act relating to the sale or other disposition of securities, and providing penalties for the violation thereof and to repeal acts in conflict therewith." It is of the character of statutes commonly known as Blue Sky laws, which have been adopted by more than three-fourths of the States of the Union for the purpose of protecting the public against fraud in the sale and disposition of stocks, bonds and other securities offered for sale to the public. It divides securities into four classes, denominated class "A," "B," "C" and "D." Securities in class "A," and sales of them, are not subject to the provisions of the act. Securities in class "B," when disposed of by the persons and in the manner provided by section 5 of the act, are not subject to its provisions. Securities in class "C" and class "D" are subject to the provisions of the act and can only be sold upon compliance with its terms. These terms require the filing of a statement in the office of the Secretary of State, verified by oath, setting forth in detail the description of the securities intended to be sold and detailed information which is specified in the law in regard to the issuer of the securities; the law under which it is organized, if a corporation; the names and addresses of the officers, directors or trustees of the corporation, or persons composing the issuer if it is an unincorporated association; a detailed statement of the assets and liabilities of the issuer and of its income, and in the case of class "D," other detailed information specified in the statute. Not less than twenty-five copies of such

statement, which must be wholly printed or wholly type-written, must be filed with the Secretary of State at the time of filing the original statement. These copies are required to bear at the head, in bold-face type, in cases in class "C" the expression, "Securities in class 'C' under Illinois Securities law;" and in cases in class "D" the expression, "Securities in class 'D' under Illinois Securities law.—These are speculative securities;" in either case followed by the expression, also in bold-face type: "This statement is prepared by parties interested in the sale of securities herein mentioned. Neither the State of Illinois nor any officer of the State assumes any responsibility for any statement herein nor recommends any of the securities described below." The Secretary of State may propound interrogatories to the persons offering to file the statements or documents required by the act, respecting any facts required to be stated with reference to the securities, which must be answered under oath, and such statements or documents shall not be filed until such interrogatories are answered, and not then unless the statements and documents and the answers to such interrogatories disclose conformity with the act. Before filing any statement or document with reference to securities in class "C" or class "D" the Secretary of State is required within a reasonable time to examine the same, and if the same is incomplete, inadequate, evasive, or otherwise not in conformity with the provisions of the act, or if the sale or offering for sale of securities based upon the plan or scheme evidenced by the statements and documents offered to be filed would in the opinion of the Secretary of State work or tend to work a fraud upon the purchaser of such securities, the Secretary of State shall refuse to file the same, otherwise such statements or documents shall be filed by the Secretary of State, and upon the filing of them the issuer, solicitor, agent, broker, dealer or owner may proceed to sell the amount of securities proposed to be sold or disposed of in this State. The act is

not a license law, and the Secretary of State is prohibited by section 7 from issuing any written or printed evidence of compliance with the act.

The constitutionality of the act is questioned because it is said to violate sections 2 and 14 of article 2 and sections 13 and 22 of article 4 of the constitution of the State. In respect to section 13 of article 4 it is argued that the act embraces three separate and distinct subjects, which are mentioned in the title and included in the body of the act. They are, the sale or other disposition of securities, penalties for the violation of the act, and the repeal of acts in conflict with it.

The constitutional provision that no act shall embrace more than one subject does not mean that it shall contain only one provision. Its purpose is to prevent the joining in one act of incongruous and unrelated matters, and an act may contain any number of provisions which tend to further its purpose. The penalties imposed by the act are directly related to carrying it into effect. They are contained in sections 29 to 34 of the act, and declare the making of certain sales of class "D" securities without compliance with the provisions of the act, and the making of representations unauthorized by the issuer of securities or inconsistent with the statements or documents filed in the office of the Secretary of State, and the violation of any of the provisions of the act, misdemeanors, for which they fix the respective penalties. They also declare the signing of any paper or document required by the act to be sworn to, knowing any representation therein to be false, perjury, and punishable under the law fixing the penalty for that crime. The definition of these offenses and their punishment tend to effectuate the general purpose of the act, which is to prevent the perpetration of frauds in the sale or disposition of stocks, bonds and securities which are fraudulent or of fictitious value. Therefore, neither the title of the act nor the act itself is repugnant to the constitutional prohibition by rea-

son of these provisions. (*People* v. *McBride,* 234 Ill. 146.) Of course, the repeal of all conflicting laws follows from the adoption of the new act, and the repeal of such laws cannot be said to be a separate subject.

The other constitutional objections refer chiefly to the classification of securities in the act, which is alleged to be arbitrary, to be based upon no reasonable connection with the purpose intended to be accomplished, to confer special privileges in violation of section 22 of article 4 of the constitution, and to take away the liberty of contract and thus destroy property rights without due process of law, in violation of section 2 of article 2. The provisions which are specifically objected to as unconstitutional are contained in paragraphs 4, 5 and 7 of section 2, which refer to securities in class "A;" paragraph 3 of section 5, which refers to class "B" securities; and the various provisions in regard to the division of securities into class "C" and class "D." The paragraphs referred to are as follows:

"Sec. 4. Securities in class 'A' shall comprise securities: * * *

"(4) Appearing in any list of securities dealt in on the New York, Chicago, Boston, Baltimore, Philadelphia, Pittsburgh, Cleveland or Detroit Stock Exchange, respectively, pursuant to official authorization by such exchanges, respectively, and securities senior to any securities so appearing.

"(5) Whereof current prices shall have been quoted, from time to time for not less than one year next preceding the offering for sale thereof, in tabulated market reports published as news items, and not as advertising, in a daily newspaper of general circulation, published in this or in an adjoining State, including the State of Michigan, not including any trade paper or any paper circulating chiefly among the members of any trade or profession.

"(7) Being notes or bonds secured by mortgage lien upon real estate or leasehold in any State or Territory of the United States or in the Dominion of Canada, when the

3฀0—28

mortgage is a first mortgage on real estate, and when in case it is not a first mortgage lien or is on a leasehold, the mortgage and notes or bonds secured thereby (not includ,ing interest notes or coupons) shall each bear a legend in red characters not less than one-half inch in height, indicating (1) that the mortgage is on a leasehold, if that be the case; and (2) that the mortgage is a junior mortgage, if that be the case.

"Sec. 5. Securities in class 'B' shall comprise securities: * * *

"(3) Sold by or to any bank, trust company or insurance company or association organized under any law of this State or of the United States, or doing business in this State under the supervision of the Department of Trade and Commerce; or of the Auditor of Public Accounts; or by or to any building and loan association organized and doing business under the laws of this State, or any public sinking fund trustees; or to any corporation or any dealer or broker in securities."

The provisions in regard to the division into class "C" and class "D" are contained in subsequent sections and will be referred to later but need not be set out now.

In considering the objections to these provisions it will be necessary to bear in mind the purpose of the legislature in adopting this act, the relation of the provisions to that purpose, and the principles which apply to the legislature in the exercise of the police power and classifying the objects of legislation.

The clearly indicated purpose of the legislature was to protect the public from deceit and prevent fraud in the sale and disposition of stocks, bonds and other securities within the State. The authority of the legislature to adopt a statute of this character is found in the police power for the promotion of the general welfare by the prevention of frauds, and the appellant concedes that the evil attempted to be regulated is a subject upon which the General Assem-

bly has the right properly to legislate. It is a question for legislative determination whether an evil exists and what means should be adopted to prevent it, and its acts will not be interfered with unless they are clearly in violation of some constitutional limitation. (*People* v. *Stokes,* 281 Ill. 159; *People* v. *Elerding,* 254 id. 579; *People* v. *McBride, supra.*) The legislature may consider degrees of evil and is not bound to pass such a law as will meet every case. (*People* v. *Stokes, supra.*) Its classification of the objects of legislation is not required to be scientific, logical or consistent if it is reasonably adapted to secure the purpose for which it is intended and is not purely arbitrary. Legislative classification does not have to be so broad and comprehensive as to include all the evils which might by possibility be brought within its terms. Classification must be accommodated to the problems of legislation and must be palpably arbitrary to authorize a judicial review of it. It cannot be disturbed by the courts unless they can see clearly that there is no fair reason for the law that would not require with equal force its extension to others whom it leaves untouched. It is competent for a legislature to determine upon what differences a distinction may be made for the purpose of statutory classification between objects otherwise having resemblance, though such power cannot be arbitrarily exercised and the distinction must have a reasonable basis. (*International Harvester Co.* v. *Missouri,* 234 U. S. 199.) In that case attention is called to the distinction between legislative power and the wisdom of its exercise in these words: "It is to be remembered that the question presented is of the power of the legislature,—not the policy of the exercise of the power. To be able to find fault, therefore, with such policy is not to establish the invalidity of the law based upon it." So in *Chicago, Burlington and Quincy Railway Co.* v. *McGuire,* 219 U. S. 549, it is said: "The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legisla-

tive considerations in dealing with the matter of policy. Whether the enactment is wise or unwise; whether it is based on sound economic theory; whether it is the best means to achieve the desired result; whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance." "The contention as to the various omissions which are noted in the objections here urged ignores the well established principle that the legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies the legislature may be guided by experience. (*Patsone* v. *Pennsylvania,* 232 U. S. 138-144.) It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, 'it may proceed cautiously, step by step,' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' (*Carroll* v. *Greenwich Ins. Co.* 199 U. S. 401-411.) If the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied.—*Keokee Consol. Coke Co.* v. *Taylor,* 234 U. S. 224-227." (*Miller* v. *Wilson,* 236 U. S. 373.) One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary. A distinction in legislation is not arbitrary if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. (*Lindsley* v. *Natural Carbonic Gas Co.* 220 U. S. 61.) It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength.

It is not within the competency of the courts to arbitrate in such contrariety. (*Rast* v. *VanDeman & Lewis Co.* 240 U. S. 342.) These are general principles which control judicial inquiry into the question of legislative power, and they have been applied in the cases which have been cited and those mentioned in the opinions in those cases and in numerous other cases in a great variety of circumstances.

This Securities law is aimed at the sale and disposition of fraudulent securities, of securities of fictitious value, of securities by persons or under circumstances likely to result in loss to the purchaser through his being cheated. It was not intended to bring all securities under the condemnation of the act, or transactions by all persons, or transactions under all circumstances. The classification is based not only on the securities but on the persons who deal in them and the circumstances under which the transactions take place. If the various exemptions from the application of the act are based upon reasons having some relation to the purpose of the act they cannot be regarded as arbitrary, however much men might differ in regard to the wisdom of the classification. Class "A" was stated in section 3 to be composed of "securities, the inherent qualities of which assure their sale and disposition without the perpetration of fraud." However valuable and substantial securities may be, fraud may be perpetrated in their sale, but the fraud at which this act is aimed is fraud in regard to the character or value of the securities themselves. Any classification which has a just relation to the character or value of the security itself is within the power of the legislature. The expression "inherent qualities" refers to the character of the securities, and the expression "assure their sale and disposition without the perpetration of fraud" refers to the assurance from their character that they are not likely to be the subject of fraudulent transactions. These securities are specified in section 4, which consists of eleven paragraphs, and they are substantially securities issued by a government or governmental

agency, a municipal or *quasi* municipal corporation, a national or State bank or trust company, a building and loan association of this State, or an insurance company under the supervision of the Department of Trade and Commerce of this State; public utility corporation securities issued in any State having at the time of issue a law regulating such utilities and the issue of securities by them; securities issued by a corporation organized not for pecuniary profit; notes secured by first mortgage upon tangible property when the mortgage is assigned, with such securities, to the purchaser; securities evidencing an indebtedness under certain conditional sale contracts; certain promissory notes for the price of goods sold; commercial paper running not more than twelve months, and certain subscriptions for the capital stock of corporations under the laws of this State. Besides these are the securities mentioned in paragraphs 4, 5 and 7, which have been quoted.

In regard to paragraph 4 it is argued that the exclusion of securities listed upon the stock exchanges of the cities named is a purely whimsical granting of a privilege to those exchanges through favor, prejudice or persuasion; that it is not different in principle from an exception of securities brought out or underwritten by certain named firms, corporations or other institutions dealing in securities; and that it is discriminatory between stock exchanges, since only stocks listed on some one of the eight named exchanges are excluded from the act, while stock listed on other exchanges not named, in all respects as well qualified as those named, is not excluded. Counsel for the appellant refer to this paragraph as an attempt to confer a monopoly upon the exchanges named, to permit the emission and sale of securities free from the provisions of the Illinois Securities law. The argument is based upon the conception by counsel for the appellant that the whole purpose of the act is to prevent the sale of securities which may be unsafe without giving to the prospective purchaser thereof knowl-

edge of the facts in connection with them or providing a place where such knowledge may be deposited for his benefit. The purpose of the act is much more comprehensive. It is not only to furnish information, to protect credulity and ignorance from deception and imposition and prevent fraudulent and deceitful sales of securities, but also to assure credit and freedom of commerce in such securities as, because of their character, the place and manner of their sale or the character of the seller, are not subject to the practices of deception and fraud to such a degree as in the judgment of the legislature to require legislation for the protection of purchasers. Sales by unknown and non-resident vendors and sleek peripatetic salesmen with glib tongues and indurated consciences, of stock or other securities for the purpose of developing wild-cat oil fields in distant States, mythical rubber plantations in Guatemala or imaginary copper mines in Mexico, for extracting gold from sea water and light from cucumbers and developing power from the rise and fall of the tides, and for the hundreds of visionary schemes, domestic and foreign, designed to secure a great return from a small investment in a short time, fall within the terms of the act. No one will question its application to such cases even though eventually many of the enterprises may prove successful, because many people have been cheated and deceived by the statements made in such cases, have improvidently invested their money in worthless securities and are without remedy.

Probably no one will question the exemption of government and municipal securities, securities issued by national and State banks, trust companies or building and loan associations of this State, or most of the other securities mentioned in section 4. All will admit that these are of a character which does not fall within the evil sought to be remedied. The legislature has seen fit to exempt securities listed and dealt in on the large stock exchanges of the country. These stock exchanges are the great markets for se-

curities in this country, and the legislature had the right to take notice of the manner in which their business of dealing in securities is conducted and the relation of such business to the stock exchanges. It recognized the evil of the ephemeral security and the evanescent salesman but did not regard securities listed and dealt in on the exchanges as subject to that evil. Such securities can be listed and dealt in on any exchange only after their legitimacy and character have been approved by the authorities of the exchange, and when they are listed they are recognized throughout the business world. The sales of such securities and the prices are published in the market reports, and the securities have an established market value which is widely known and easily ascertained. No one can be deceived as to their value if he makes any serious effort to find out, and the legislature may well have concluded that such securities were not within the evil which this act was directed against. The exemption confers no privilege upon stock exchanges. They neither issue nor deal in securities. It confers no privilege upon issuers or dealers in securities. It merely recognizes a condition which is recognized and acted upon by the business world and applies that condition to the subject matter of legislation without discrimination. Any issuer of securities of a quality which will justify listing on the exchange may have them listed. The assurance of the integrity of securities listed and dealt in on the stock exchanges is impliedly recognized by the Supreme Court of the United States in the case of *Hall* v. *Geiger-Jones Co.* 242 U. S. 539, in considering the Ohio Blue Sky law, where it is said in reference to that law: "It extends to the general market something of the safeguards that are given to trading upon the exchanges and stock boards of the country,—safeguards that experience has adopted as advantageous." It was competent for the legislature to make this test, which has been justified by experience, a ground for exemption of securities in the act. In the case last cited

a discrimination between securities which have and those which have not been published in regular market reports was held within the power of classification which a State has. The same court sustained a distinction in the Michigan statutes between securities which have and those which have not been listed in any standard manual of information approved by the commission. *Merrick* v. *Halsey & Co.* 242 U. S. 568.

The limitation of the exemption to stock listed on the exchanges of the eight cities named is regarded as unjustly discriminatory because all stock exchanges are not included. The legislature was not required to include all stock exchanges. The purpose of this paragraph and the next was to exempt securities which by reason of their character, assured by their being listed on the stock exchange and by the public information in regard to them by reason of the publication of the market reports, were not within the evil which the legislature intended to remedy. The act dealt with transactions in the State of Illinois, and it was to such transactions the two paragraphs referred to were intended to apply. Paragraph 5 referred to the publication of market reports in a daily newspaper of general circulation published in this or in an adjoining State, including the State of Michigan. It might as well be said that this was discriminatory because it did not include newspapers published in other States. The stock exchanges in New York and Chicago are the greatest general stock markets in the country. The reports of sales on those exchanges are regularly published in newspapers of the State of Illinois and adjoining States, and this is not true of any other stock exchanges. The transactions of other exchanges are not so fully published except in the States in which they are situated. The legislature, in establishing a rule of evidence to determine the character of securities, was not obliged to include all stock exchanges and all newspapers, but might make a selection of newspapers and stock exchanges reasonably adapted to

accomplish the purpose intended. With such reasonable selection the court cannot interfere.

What has already been said answers the objection in regard to the exemption of bonds and notes secured by mortgage upon real estate and the exemption of securities sold by banks or by the other organizations mentioned in paragraph 3 of section 5. If the legislature regarded notes and bonds secured by real estate mortgages as an investment, and the banks and other organizations mentioned in paragraph 3 of section 5 as a class of dealers not within the evil at which the act was aimed, it cannot be said, in view of the public estimation in which such securities and such organizations are usually held, that the distinction has no reasonable basis or that the legislature was not justified in exempting such securities and such organizations from the operation of the act. Its conclusion is not subject to review by the court.

It is insisted that the exemption of securities sold by the corporations or associations mentioned in paragraph 3 of section 5 from the operation of the act grants to such corporations and associations a special privilege denied to other dealers, in violation of section 22 of article 4 of the constitution. While the privilege of engaging in a lawful business is the right of every individual, it is subject to the police power and must be exercised in accordance with the requirements of statutes passed in the exercise of that power for the protection of the public. No person or class of persons can be excluded from that privilege while others are permitted to enjoy it unless some reason exists for the distinction having a just relation to the purpose to be accomplished. The distinction as to the organizations mentioned is apparent. The object of the law is to protect the public from the dishonesty, incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer loss. The banks

and other organizations named are all under Federal or State supervision. The legislature might well believe that because of their character, financial responsibility and methods of doing business, and of the public supervision and inspection of them, no necessity existed for requiring further guaranties for the protection of the public in dealing with them, and a classification based upon such a distinction cannot be regarded as arbitrary or unreasonable.

The objection to the division between securities in class "C" and in class "D" on the basis of established income and prospective income is, that the legislature has adopted the false and illusory standard of temporary net earnings. This objection goes only to the wisdom of the act. Securities in class "C" include those issued by an issuer on a property, business or industry which has been in continuous operation not less than two years and has shown net profits at the rate indicated in the statute. Securities which are unable to comply with this requirement and do not fall within class "A" or class "B" are in class "D" and subject to much more onerous conditions before they can be sold. It certainly cannot be said that the legislature might not regard an enterprise which has been in operation for two years at a substantial profit as falling within a different class more entitled to confidence, than an enterprise which has never been in operation, whose development must be wholly in the future, whose capacity to earn profits must be accepted on faith, upon such evidence as may be accessible. By this act the best standard for judgment as to the value of any enterprise or the probability of deceit in the sale of stock or securities based upon such enterprise may be open to question, but it certainly is a standard based upon a reasonable foundation, though it may not be the best. It was therefore within the competency of the legislature to select this standard if it deemed it proper, and it is not for the court to say that it should have selected some other

standard which may seem to the court better adapted to the purpose.

A special objection is made to the requirement that the statements filed in regard to class "D" securities must contain the statement, "These are speculative securities," and the requirement that every circular or prospectus in regard to them shall state that they are speculative securities. Securities are speculative when the investment in them involves some risk of loss perhaps greater than the ordinary investment, and it cannot be said that the legislature had not reasonable ground for believing that securities in class "D" were speculative in their nature. If the classification is proper it was for the legislature to determine the means to be adopted to accomplish the purpose, and if it chose to require the securities to be labeled as speculative it did not exceed its powers.

Practically all the objections made to this law have been decided adversely to the contention of the appellant by the Supreme Court of the United States in the consideration of similar laws passed by the legislatures of Ohio, South Dakota and Michigan, in the cases of *Hall* v. *Geiger-Jones Co. supra, Merrick* v. *Halsey & Co. supra,* and *Caldwell* v. *Sioux Falls Stock Yards Co.* 242 U. S. 559. The questions in those cases arose under the fourteenth amendment to the constitution of the United States, but they did not differ substantially from the questions here. It was held in those cases, and it was conceded here, that the legislature had the right to impose upon dealers in securities requirements for the protection of purchasers from them. The objection in the Federal courts was that the law passed was in violation of the constitutional provision that no State should deprive any person of life, liberty or property without due process of law or deny to any person within its jurisdiction the equal protection of the laws. In this case the objection arises under section 2 of article 2 of the State constitution, which provides that no person shall be deprived

of his life, liberty or property without due process of law. In the Federal courts, as in this court, the contention that the act deprived persons of their property without due process of law was based upon the alleged unauthorized classification, which by its unequal application, it was alleged, deprived certain persons of the equal protection of the laws and of their property without due process of law. This is indicated by the language of the Supreme Court of the United States in the case of *Hall* v. *Geiger-Jones Co. supra:* "We cannot give separate attention to the asserted discriminations. It is enough to say that they are within the power of classification which a State has. 'A State may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. * * * If a class is deemed to present a conspicuous example of what the legislature seeks to prevent, the fourteenth amendment allows it to be dealt with, although otherwise, and merely logically, not distinguishable from others not embraced in the law.' (*Central Lumber Co.* v. *South Dakota,* 226 U. S. 157.) The cases were cited from which those propositions were deduced. To the same effect is *Armour & Co.* v. *North Dakota,* 240 U. S. 517." The acts involved in the Federal decisions did not exempt stocks listed on a named stock exchange, securities sold by a bank, and did not discriminate between securities based upon established or prospective income or require any securities to be labeled "speculative." These are details which we have already held do not affect the merits of the case.

The appellant makes the objection that the form of action is assumpsit and should be debt, and that the declaration is insufficient to sustain the judgment. An action of assumpsit will lie for money had and received for the use of the plaintiff, wherever, by reason of a contract relation, the defendant has obtained possession of money which in

justice he ought to refund. (*Arnold* v. *Dodson,* 272 Ill. 377.) Assumpsit may be supported for money accruing due to the plaintiff under the provisions of a statute which does not restrict him to any other remedy. (1 Chitty's Pl. 106.)

It is said that the allegation that the certificates of beneficial interest issued by the American Chief Oil Company were class "D" securities is not the statement of a fact but of a legal conclusion. The statute in the second section has defined "securities" as including stocks, bonds, debentures, investment contracts, notes, evidences of indebtedness, participation certificates, certificates of shares or interest, pre-organization certificates and subscriptions, certificates evidencing shares of or interest in trust estates or associations, and profit-sharing certificates. Section 3 divides all these securities into four classes, "A," "B," "C" and "D." The classification is based upon the character of the securities as defined in that section. Sections 4, 5 and 6 describe in greater detail the classes "A," "B" and "C," and section 8 declares that all securities other than those falling in those classes shall be known as securities in class "D." The statute has made a definite and fixed classification of the securities which it has defined. It is not necessary that the declaration should set forth the whole statute in order to describe the character of the securities involved. The defendant is presumed to be acquainted with the statute, and the allegation that the securities were in class·"D," in view of the statute, furnishes all the facts necessary to inform him or the court of the character of the securities involved. The allegation was sufficient to enable the defendant to know the nature of the plaintiff's cause of action and to prepare his defense.

It is further argued that the declaration is insufficient in alleging that the American Chief Oil Company had not complied with the regulations and requirements of the Illinois Securities law relating to the sale and offering for sale of class "D" securities, nor any or either of them, and had

not filed any statement or inventory, as by said law re-
quired, in the office of the Secretary of State, or any copy
of any statement or inventory. It is contended that the
law imposes no obligation upon the company to comply
with the act; that any other person may do so, and though
the company may not have complied with the law, the de-
fendant or some other person may have done so, and that
the averment does not negative the inference that the state-
ments required have, in fact, been filed with the Secretary
of State.

Section 9 of the act provides that no security in class "D"
shall be sold or offered for sale until there shall have been
filed in the office of the Secretary of State certain state-
ments and documents which are enumerated, many of which
are of such a character as can be made only by the issuer
of the securities. Among other things, besides a description
of the securities intended to be offered for sale, and the
amount of them, a certified copy of the charter or articles
of incorporation and by-laws if the issuer is a corporation,
or a copy of the articles of partnership, association or trust
agreement if the issuer is a firm, trust, partnership or un-
incorporated association, and a description of the industry
engaged in or intended to be engaged in, and the approxi-
mate time when such industry was or will be established,
there must be filed an inventory showing the assets of the
issuer; an appraisement of the assets of the issuer; a state-
ment in detail of the gross income of the issuer and the
source or sources thereof, and of its operating and other
expenses for a period of twelve months prior to the date
of filing such statement, or for the period of the existence
of the issuer if less than two years prior to the date of fil-
ing; a copy of the most recent balance sheet of the issuer
showing the financial condition of the issuer at a date not
more than thirty days prior to the date of filing, and giv-
ing an analysis of surplus account from inception of such
issuer. These statements are required to be verified by the

oath of not less than two of the officers of the issuer if the issuer be a corporation, or by not less than two members of a firm, trust, partnership or association if the issuer be non-incorporated. These documents are of such a character as can be furnished only by the issuer, and therefore the requirement that they shall be filed in the office of the Secretary of State is a requirement that they shall be filed by the issuer. These statements are required for the qualification of securities in class "D," and section 14 provides that after the qualification of such securities by the issuer, any dealer or owner may sell such securities upon filing in the office of the Secretary of State a statement, verified by his oath, of the amount and description of the securities to be sold by him or it, the maximum price for which they are to be sold, his or its address by street and number, qualification, occupation and business experience for a period of ten years prior to filing such statement. These are personal statements of the dealer or owner required to be filed by them, but it is evident that qualification of securities in class "D" must be by the issuer, since no other person can make or furnish the statements required. Though they may be physically carried to the office of the Secretary of State by an agent or broker, the act of filing is legally the act of the issuer.

Objection is made to the declaration on the ground that it does not aver that the defendant did the act complained of knowingly; but this objection is not well founded, for the second count of the declaration, after alleging that the American Chief Oil Company had not complied with the regulations and requirements of the law, states that the plaintiff, well knowing the premises, did the acts complained of. The court did not err in overruling the demurrer.

Objection is made to the allowance of interest, and this objection must be sustained. Interest is allowed only in the cases provided by statute, and this is not one of them. The recovery authorized by section 37 is the amount paid by

the purchaser and his reasonable attorney's fees. The extent of the penalty for dealing in securities contrary to the provisions of the statute was a matter for the legislature to determine, and the declaring of all contracts made in violation of the statute void and authorizing the recovery of the purchase money, together with his reasonable attorney's fees, was within its power.

The appellee in his brief offers to remit the sum of $13.33 if in the opinion of the court there can be no recovery of interest. This *remittitur* will obviate the error, and the judgment will be affirmed as to the residue of $300 as of the date of the judgment of the county court. The costs in this court will be paid by the appellee.

*Judgment affirmed.*

Mr. JUSTICE DUNCAN, dissenting:

I concur in all that is said in the opinion of the court except what is said as to the validity of paragraph 3 of section 5 of the Securities act. This paragraph confers upon banks, trust companies or insurance companies or associations organized under any law of this State or of the United States, or doing business in this State under the supervision of the Department of Trade and Commerce, and others in that paragraph named, the special privilege of selling any and all securities whatever falling under class "C" or class "D" without qualifying for sales of such securities under sections 7 and 9 of the act. Not only does this paragraph permit such persons or associations to make sales of securities falling under classes "C" and "D" without complying with the requirements of the act, but it permits such persons and associations to sell in competition with those who have qualified to sell securities falling under classes "C" and "D" and have paid their fees, without having the securities in those classes somewhat discredited by a sworn statement on file in the office of the Secretary

of State, containing at their tops, in bold-face type, the expression, "Securities in class...... under Illinois Securities law. These are speculative securities. This statement is prepared by parties interested in the sale of securities herein mentioned. Neither the State of Illinois nor any officer of the State assumes any responsibility for any statement contained herein nor recommends any of the securities described below." They are not required to pay any fees for the privilege of selling securities in either class "C" or "D," as provided in section 26 of the act.

I have not time to elaborate or explain my position but only time to state my reasons for concluding this provision is invalid. After an agent, broker or issuer qualifies to sell securities in classes "C" and "D," such agent, broker or issuer is entitled, under our constitution, to have equal privileges with the privileged classes in selling securities in classes "C" and "D," and cannot be handicapped by having his securities in said classes classed as aforesaid and more or less discredited as aforesaid. The statute does not guarantee or give such equal rights, but allows the banks and the others of the privileged class to sell such securities as fall in classes "C" and "D" without paying any fees for the privilege and to sell them as they please, without any public information on record as to what class they belong to or that they are "speculative securities," etc. This provision violates section 22 of article 4 of the constitution, providing that the General Assembly shall pass no local or special law granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever. I therefore respectfully dissent to the conclusion of the court with reference to the validity of this paragraph of the act.