Mary A. Scully et al., Appellees, v. John De Met
et al., Appellants.

Gen. No. 42,479.

Opinion filed May 2, 1944.

ZIMMERMAN & NORMAN, of Chicago, for certain appellants; EDWARD A. ZIMMERMAN and WILLIAM R. ENGELHARDT, both of Chicago, of counsel.

REUEL H. GRUNEWALD, of Chicago, for certain other appellant; FRANCIS M. COOPER, of Chicago, of counsel.

MAURICE ALSCHULER, of Chicago, for appellees.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

In an action brought by plaintiffs to enforce claims arising under the Illinois Securities Law (ch. 32, pars. 254 *et seq.,* Ill. Rev. Stat. 1935), defendants suffered adverse summary judgments aggregating $1,680.75, from which they have taken an appeal.

There is no dispute as to the salient facts, disclosed by the pleadings and numerous supporting affidavits. De Met's, Inc., was incorporated under the laws of Delaware in 1929 and contemporaneously therewith 132,000 of the total 135,000 shares of common stock were placed in a voting trust. The defendants John and Nicholas De Met received some 20,000 voting trust certificates representing their minority interest in the corporation as of 1929, and continued to hold these securities as their individual property until 1936, when about 15,000 shares were sold to the public through R. J. Koeppe and Company, licensed brokers, including an aggregate of 240 shares sold to plaintiffs, who subsequently learned that the stock was not qualified under the Securities Law, tendered the stock to the sellers, demanded the return of their money, which was refused, and then brought suit to recover the purchase price.

The corporation had also issued its preferred stock, which was listed on the Chicago stock exchange and in 1936 had a market value of $25 a share. Plaintiffs were the owners of preferred stock in various denominations. In the early summer of 1936 John and Nicholas De Met appointed Koeppe to sell their common stock and agreed that he should receive as compensation for his services "any amount in excess of $4.375 per share." One of Koeppe's salesmen prevailed upon plaintiffs to sell their preferred stock and purchase voting trust certificates representing the common stock for the amount realized from the sale. Defendants contend that these transactions constituted

an exchange of securities, but the facts disclosed by the supporting affidavits reveal that it was not treated as an exchange but rather as an out and out sale of the "senior" security and the purchase of the "junior." The sales price for all the common stocks sold to plaintiffs was $7 a share, netting the broker a profit of $2.625 a share on 240 shares. The voting trust certificates had no fixed market value and therefore constituted Class "D" securities, which were not registered under the Securities Law.

The sole question therefore presented by the respective motions of plaintiffs and defendants for summary judgments is whether the sales fall within the exemption of section 5, paragraph 258 of the act, which provides: "Securities in Class 'B,' being exempted sales, shall include: (1) The sale in good faith and with no intent to defraud of any security by or on behalf of a vendor who is not an issuer, or underwriter thereof, or a dealer or broker, and who, being a *bona fide* owner of such security, disposes of his own property for his own account and such sale is not made directly or indirectly, for the benefit of the issuer or an underwriter of such security, or for the direct or indirect promotion of any scheme or enterprise with the intent of violating or evading any provisions of this Act." It is argued that under the foregoing quoted exemption of the act, an individual owner may sell his own securities either through his own efforts or through the efforts of another acting for him, without violating the statute, and that upon the construction sought the court should have entered summary judgment for defendants instead of plaintiffs. The trial judge was of the opinion, and counsel for both parties concede, that under the exemptions of section 5 defendants, as individuals, could themselves have sold their entire blocks of common stock to any person or persons desiring to purchase them, but held that the sales of these securities to various individuals through a licensed broker was a viola-

tion of the Securities Law, for which plaintiffs were entitled to recover the purchase price upon tendering the stock to the seller.

Prior to 1933 section 5 exempted only an isolated transaction, and the precise question for determination is whether the statute as amended, authorized the holders of corporate stock, unqualified under the act, to distribute it through licensed brokers for commissions to be paid to them, and to employ the usual methods of public offerings of securities. No cases touching upon the precise question are cited by either counsel, and we know of none where the matter has been discussed or adjudicated. However, it is apparent from the early decisions that the so-called "Blue Sky Law" was enacted to protect the unwary and those easily beguiled, and as plaintiffs' counsel points out, shares of stock offered generally on the market by a regularly licensed broker to the public at large imbue prospective purchasers with confidence and inspire credulity that the securities are qualified for distribution under the Securities Law. The public was the concern of the legislature, not the owner of the securities, and it was for the protection of the public that the law was enacted. Various Supreme Court decisions in this state have emphasized this primary purpose of the statute, which is again repeated in *Stewart v. Brady*, 300 Ill. 425, as follows: "The object of the law is to protect the public from the dishonesty, incompetence, ignorance and irresponsibility of persons engaged in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer loss."

Defendants rely principally on that part of section 5 which provides that the securities exempted from the application of the act shall include any security sold "by or on behalf of a vendor who is not an issuer, or underwriter thereof, or a dealer or broker, and who, being a *bona fide* owner of such security, disposes of

his own property for his own account," and their counsel argue that a licensed broker may act on behalf of a vendor in selling his own securities without rendering himself liable to the penalties of the statute. We have no precedent to guide us in the construction of the quoted portion of the statute, but it seems reasonably clear that "B" securities under the act were intended only to be offered at private sales, as distinguished from public offerings where, as in the case at bar, approximately 15,000 shares were distributed through a broker's salesman to the general public. Purchasers of stock such as banks, trust companies or insurance companies need no protection, but individual buyers of small amounts of securities who have no means of investigation and rely upon the representations of a licensed broker, should be afforded protection under the act. To hold otherwise would make of the law a shield for the protection of the unscrupulous seller, and the statute was not enacted for that purpose. These conclusions are supported by the language of section 5 which provides that sales may be made by or on behalf of the vendor "who is not an issuer, or underwriter thereof, or a dealer or broker;" for if a vendor may act through a broker in the sale of his stock, it is difficult to understand why the statute should discriminate against a broker in the sale of his own stock. The obvious reason, as pointed out by plaintiff's counsel, is that a sale by a broker gives assurance to the public, *ipso facto,* that such securities are properly qualified.

From an examination of the entire context of the statute regulating the sale of securities in this state, we conclude that the public offering of unqualified stock to a large number of persons, any one of whom might become a prospective purchaser, is not such a transaction as to come within the exemptions of section 5. Any other interpretation would, in our opinion, be contrary to the spirit as well as the letter of the act, and would permit and encourage sales through

brokers on commission of unqualified securities to gullible and unwary buyers, without affording them any protection whatsoever.

Accordingly, the summary judgment of the circuit court should be affirmed, and it is so ordered.

*Judgment affirmed.*

SCANLAN and SULLIVAN, JJ., concur.