# The People of the State of Illinois, Defendant in Error, v. Charles W. Gillett, Plaintiff in Error.

## Gen. No. 30,819.

1. CORPORATIONS—*when information charging violation of Securities Law not bad for duplicity.* An information against a broker, under Cahill's St. ch. 32, ¶ 282, for sale of Class D securities contrary to law, was not bad for duplicity as charging that defendant was acting both for the issuing maker and for the bond owner and hence an offense under paragraph 283 also, since the allegations as to ownership may be disregarded as surplusage.

2. CORPORATIONS—*responsibility for illegal sale of securities through agent.* A conviction under Cahill's St. ch. 32, ¶ 282, against a broker for the sale of Class D securities contrary to law, will be sustained though the evidence showed the one actually making the sale was the broker's agent.

3. CORPORATIONS—*exchange of securities as a violation of the Securities Act.* The exchange of securities issued without complying with the Blue Sky Law for other securities constitutes a "sale" within Cahill's St. ch. 32, ¶ 282, imposing a penalty therefor, since, under paragraph 255, the word "sale" includes "exchange."

4. CORPORATIONS—*what is not an isolated transaction within the Securities Law.* On a prosecution under Cahill's St. ch. 32, ¶ 282, against a broker for sale of Class D securities contrary to law, the transaction is not within the exemption of paragraph 258 as an isolated transaction when the evidence showed two exchanges, and a sale for cash afterwards rescinded.

5. CORPORATIONS—*necessity for showing class of securities in prosecution under Securities Law.* In a prosecution for the sale of securities in violation of the Securities Act, it is only where the facts show that the securities fall within Class C or D that the provisions of sections 7 and 9, Cahill's St. ch. 32, ¶¶ 260, 262, are applicable, and if the evidence shows that the securities sold belong to Class C or D, to prove a violation it is essential to prove that the statements required by these sections have not been filed.

6. CORPORATIONS—*burden of proof in prosecution under Securities Law.* Under Cahill's St. ch. 32, ¶ 282, the burden is on the State, in a prosecution of a broker for sale of Class D securities contrary to law, to prove beyond a reasonable doubt that the securities were in the class described in paragraph 256, subd. 4, and paragraph 261, as Class D securities.

7. CORPORATIONS—*when classification of securities as Class D not established.* In a prosecution for selling Class D securities issued with-

out complying with the Securities Law, the classification of the securities as Class D is not established beyond a reasonable doubt where, under the evidence they might appropriately be within the classification, hence where the evidence shows that they were secured in part at least by real estate and nothing is shown as to the value of such realty, they cannot be regarded as Class D securities, by a process of eliminating the other classifications.

8. CORPORATIONS—*when securities not required to bear the legend as to leaseholds.* Under Cahill's St. ch. 32, ¶ 257 subd. 7, bonds secured by a "lease agreement and franchise," not being a leasehold on realty, are not required to bear the legend required for leaseholds on realty so that lack thereof does not entitle the State to claim that such bonds are Class D securities in a prosecution of a broker under paragraph 282 for unlawful sale of bonds.

9. CORPORATIONS—*when fine for violation of Securities Law excessive.* A fine of $5,000, imposed on a broker prosecuted under Cahill's St. ch. 32, ¶ 282, for unlawful sale of bonds, would be excessive in view of his proved belief in their value.

Error by defendant to the Municipal Court of Chicago; the Hon. ARNOLD HEAP, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1926. Reversed and remanded. Opinion filed December 29, 1926.

BRUNDAGE, LANDON, HOLT & BOORD and WILLIAM FRIEDMAN, for plaintiff in error; FLOYD E. BRITTON, of counsel.

ROBERT E. CROWE, State's Attorney, for defendant in error; EDWARD H. TAYLOR, EDWARD E. WILSON and MORTIMER C. GROVER, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

On December 20, 1924, two informations were filed in the municipal court of Chicago, charging the defendant with a violation of the Illinois Securities Law [Cahill's St. ch. 32, ¶ 254 *et seq.*], a jury was waived, the two causes submitted to the court and, after hearing, the defendant was found guilty as charged and a fine of $5,000 was imposed in each case.

The information in the instant case contains three

counts: The first count alleges that the defendant "being an agent, solicitor or broker of a certain corporation to-wit: Midland Power Company or one Adam F. Weckler," unlawfully offered to sell to one Godding, Class "D" securities as defined by the Illinois Securities Law and that the issuer of such securities had not filed in the office of the secretary of State the statements and documents required by the statute; that the securities so offered for sale were 7 per cent gold bonds of the face value of $15,000 of the Midland Power Company. The second and third counts are the same, except that in the second count the defendant is charged with unlawfully selling the securities and in the third count with unlawfully authorizing, aiding or assisting in the sale of the securities.

The defendant contends that his motion to quash the information should have been sustained for the reason that each count was bad for duplicity, in that each charged the defendant with the commission of two distinct offenses. In support of this it is said that each count of the information charges the defendant with being the agent, solicitor or broker of the Midland Power Company, the issuer of the bonds or that the defendant was the agent, solicitor or broker of Weckler, the owner of the bonds, and that, under the statute then in force, the penalty for the sale of securities by one as agent or broker for the issuer of such securities was more severe and different than the penalty where the sale was made by the agent or broker for the owner of securities when the owner was not the issuer of them. It is true that the penalties provided by the statute are as the defendant contends. These sections are 29 and 30, Cahill's 1923 St. ch. 32, ¶¶ 29, 30, p. 925.

In support of the contention that each count of the information is bad for duplicity, counsel for the defendant cite *State v. Dorsett*, 21 Tex. 656; *Hutchison v. Commonwealth*, 82 Pa. St. 472, and other cases. In

the *Dorsett* case, the defendant was charged with "wilfully and negligently permitting one to escape." The court said that "Voluntary and negligent escapes are made by the Statute distinct offenses, created by different sections, annexing different punishments. The former may be a felony. The latter can only be a misdemeanor. The indictment charges that the defendant did wilfully and negligently permit the escape." And it was held that since the indictment charged two offenses, it was bad for duplicity.

In the *Hutchison* case the defendant was charged with embezzlement as "trustee and agent." And it was held that embezzlement by a trustee was one offense and embezzlement by an agent was another offense, and indictable under a different section of the code, and the court there held that the indictment was bad for duplicity. But in the instant case the defendant is not charged with two offenses. He is charged with selling or offering to sell, etc., securities which are designated by the statute as Class "D" securities without the issuer of such securities having filed in the office of the secretary of State certain statements and documents required by the act. This is the charge in the information and the allegation as to the ownership of the bonds which were sold, or offered for sale, by the defendant was unnecessary and may be treated as surplusage. *Durham v. People,* 4 Scam. (Ill.) 172. The information is not bad for duplicity.

We think the evidence discloses that the following facts are shown beyond a reasonable doubt: That the defendant was a broker conducting his business in Chicago and had been so doing for about 30 years; that one Allen was employed by him in making sales and exchanges of securities; that in January, 1924, one Weckler went to the defendant's place of business with a view of borrowing money on bonds issued by the Midland Power Company, a corporation organized under the laws of the State of Delaware, and which

corporation was conducting business in the State of Minnesota, and had issued 7 per cent gold bonds of the face value of $65,000; that Allen told Weckler that the defendant would not loan money on the bonds, but that Weckler might obtain such a loan from Byllesby & Company of Chicago; that Weckler then went to Byllesby & Company, having been introduced by Allen, and after a few days obtained a loan from that company in the sum of $15,000. Weckler gave his note for that amount, dated January 19, 1924, due 90 days after date, and the bonds were put up as collateral security to the note. It further appears that prior to that time Weckler had borrowed $6,500 from the State Bank of Chicago, putting up the bonds as collateral to secure the payment of that sum; that when Weckler borrowed the money from Byllesby & Company, the State Bank was paid and the bonds given to Byllesby & Company. On February 7, 1924, the defendant loaned Weckler $19,000. Out of this sum the Byllesby loan was paid and the bonds placed by Weckler with the defendant as collateral security for the $19,000. Weckler authorized the defendant to sell the bonds and Allen shortly thereafter went to see Jared W. Fox and Charles R. Godding, who were engaged in business on South Water Street under the firm name of Fox & Godding, with a view of disposing of the bonds. Allen had some time prior to this sold certain stocks to Fox and to Godding. After Allen had presented the matter to Fox and Godding, it was finally agreed that they would give these stocks in exchange for some bonds. Weckler authorized the exchange to be made and shortly thereafter bonds of the face value of $15,000 were given by the defendant to Fox in exchange for certain shares of stock which Fox owned and at the same time a similar number of bonds were given to Godding for stock which he owned. Shortly after the exchange was made, Gillett, the defendant, upon authority from Weckler, sold the stock

which he had received from Fox and Godding, applied the proceeds thereof in payment of his loan to Weckler, gave the balance to Weckler and delivered to him the balance of the bonds. This was done February 14, 1924.

It further appears from the evidence that some time thereafter a receiver was appointed by a Minnesota court for the Midland Power Company and an ancillary receiver was appointed by the superior court of Cook county. The evidence further shows that the Midland Power Company did not file, in the office of the secretary of State of Illinois, the documents and statements required by the Illinois Securities Act [Cahill's St. ch. 32, ¶ 254 *et seq.*]. The evidence further shows that the Midland Power Company was operating an electric light plant at Fosston, Minnesota; that it authorized the issuance of the $65,000 bonds and to secure the payment of them executed its trust deed or mortgage conveying "All right, title and interest of the company in a lease agreement and franchise to supply electric energy for lighting, heating and power purposes within the corporate limits of Fosston, Minnesota, entered into by and between L. M. Bartlett of Minneapolis, Minnesota, and the village of Fosston, Minnesota, under date of December 6th, 1920 and continuing in force and effect until December 6th, 1940, said agreement and franchise having been transferred by assignment to the Midland Power Company by said L. M. Bartlett under date of March 19, 1923." Also all its right, title and interest under a written contract with the Red River Power Company; "all structures, buildings, power stations, substations, distribution systems, transmission lines * * * together with all apparatus, fixtures, equipment and machinery, including dynamos, generators, wires, cables, poles," and all the other property, real or personal, tangible or intangible, then owned or after acquired by the company. No evidence was of-

fered either as to the financial history of the Midland
Power Company or as to its assets or liabilities, its
solvency or insolvency, or as to the character of the
bonds in question.    The evidence also shows that
the defendant in February, 1924, sold one bond of the
face value of $1,000 of the Midland Power Company
to one Magnuson.

The defendant contends that he did not offer to
sell nor did he assist in the selling of any of the bonds
in question; that the evidence shows that the bonds
were exchanged for stock of Fox and Godding which
was but a single transaction, and that being
but a single transaction, it was exempt as an
isolated transaction under the provisions of section 5
of the act [Cahill's St. ch. 32, ¶ 258].  In support of
this it is said that the proof shows that the defendant
never talked with Fox or Godding about the transac-
tion, but that all the dealings they had were with
Allen personally, who had sold securities to them over
a period of years when he was not representing the
defendant but other parties.  We think it would serve
no useful purpose to discuss the evidence in detail
on this point for we are clearly of the opinion that
whatever Allen did in the matter was as a representa-
tive of the defendant.  The evidence shows Allen was
employed by the defendant to sell securities on a com-
mission basis and that defendant received part of the
commission for disposing of the bonds to Fox and
Godding.  Nor do we think there is any merit in the
contention that the transaction with Fox and Godding
did not constitute a sale within the meaning of the
act.  By section 2 of the act [Cahill's St. ch. 32, ¶ 255]
it is provided that "The term 'sale' means and in-
cludes contracts and agreements whereby securities
are sold, traded or exchanged for money, property or
other thing of value."  In *People v. Revesz,* 229 Ill.
App. 616, we held that the exchange of promissory
notes for certificates of stock was a sale within the
meaning of the Illinois Securities Law.

We are also of the opinion that the evidence shows
there were three separate and distinct sales of the
bonds made by the defendant. Bonds of the par value
of $15,000 were sold by the defendant's representative
to Fox in exchange of stock owned by Fox; that bonds
of the face value of $15,000 were likewise sold to God-
ding in exchange for stock owned by Godding and al-
though these two exchanges took place at the same
time, they were two separate and distinct transactions.
The evidence also shows that the defendant sold one
of the bonds of the face value of $1,000 to Magnuson,
although after this sale it appears the evidence shows
Magnuson who had been a customer of the defendant
became dissatisfied and returned the bond to the de-
fendant. It follows that section 5 [Cahill's St. ch.
32, ¶ 258], which applies to an isolated sale, even if it
could be applied to this case under any circumstances,
is not applicable, there being three separate and dis-
tinct sales.

But the defendant further contends that the judg-
ment is wrong and should be reversed because there
is no proof in the record that would show beyond a
reasonable doubt that the bonds of the Midland Power
Company were Class "D" securities within the pur-
view of the act as alleged in the information. We
think this contention must be sustained.

The act divides securities into four classes: Sec-
tion 3 [Cahill's St. ch. 32, ¶ 256] provides:

"(1) Securities, the inherent qualities of which as-
sure their sale and disposition without the perpetra-
tion of fraud, which shall be known as securities in
Class 'A';

"(2) Securities, the inherent qualities of which,
or in the nature of one or both parties to the sale there-
of, assure their sale and disposition without the per-
petration of fraud, which shall be known as securities
in Class 'B';

"(3) Securities based on established income which
shall be known as securities in Class 'C';

"(4) Securities based on prospective income, which shall be known as securities in Class 'D.'"

Section 4 [Cahill's St. ch. 32, ¶ 257] of the act provides in more detail what may be included in Class "A" securities, among which in paragraph 7 are notes or bonds secured by a mortgage lien upon real estate or leasehold (other than oil, gas, and mining leases) "in any state or territory of the United States or in the Dominion of Canada: (a) when the mortgage is a first mortgage on real estate and when the aggregate face value of such notes or bonds * * * does not exceed the fair market cash value of such real estate * * * *provided,* that in case of a junior mortgage lien on real estate or a mortgage lien on a leasehold, the mortgage and notes or bonds secured thereby * * * shall each bear across the face and text thereof a legend in red letters not less than one-half inch in height, stating (1) that the mortgage is a junior mortgage, if that be the case, and (2) that the mortgage is on a leasehold, if that be the case."

Sections 5 and 6 [Cahill's St. ch. 32, ¶¶ 258, 259] provide in some detail what shall constitute Class "B" and "C" securities, respectively. Section 8 of the act [Cahill's St. ch. 32, ¶ 261] provides: "All securities other than those falling within Class 'A', 'B' and 'C', respectively, shall be known as securities in Class 'D'." And by sections 7 and 9 [Cahill's St. ch. 32, ¶¶ 260, 262], it is provided that before securities in Class "C" or Class "D" are sold, a statement giving certain information in reference to the company whose securities it is proposed to sell, must be filed in the office of the secretary of State.

Counsel for the People in their brief contend, as we understand it, that since the People proved that no statement had been filed by the Midland Power Company in the office of the secretary of State as provided by sections 7 and 9 of the act, which have to do with Class "C" and "D" securities, they thus established

the fact that the bonds of the Midland Power Company in question were not Class "C." In this connection counsel say that the People have proved that the bonds in question were not Class "C" securities, because "before any security may become a Class 'C' security the statements and documents required by section 7 must not only have actually been presented to the Secretary of State for approval but must have been stamped 'filed' by that official in the manner prescribed by section 2 of the Act." It is obvious that this argument is unsound. The filing of the statement required by section 7 and section 9 of the act in the office of the secretary of State has no tendency to prove or disprove whether any securities belong to one class or the other. It is only when the facts show that the securities fall within Class "C" or "D" that the provisions of sections 7 and 9 [Cahill's St. ch. 32, ¶¶ 260, 262] are applicable and if the evidence discloses that the securities sold or offered to be sold belong to Class "C" or Class "D," then to prove a violation of the act it is necessary to prove that the statements required by sections 7 and 9 [Cahill's St. ch. 32, ¶¶ 260, 262] have not been filed.

In the *Revesz* case we pointed out that where there was no evidence as to the history of the company whose securities had been sold, and no evidence as to its assets or liabilities that the proof failed to show that the securities were Class "D" securities. And we there said (p. 627): "We may be justified in strongly suspecting that they belong to Class "D," but that is not enough; that is not proof beyond a reasonable doubt of a material fact." So in the instant case we may be justified in strongly suspecting that the bonds in question belong to Class "D," considering the fact that they were issued by the Midland Power Company to raise money and that apparent difficulty was had in disposing of them, but this does not warrant us in holding that, beyond a reasonable

doubt, the stock belonged to Class "D." We think there is no merit in the contention of the People that the burden was upon the defendant to prove that the bonds in question belonged to either Class "A," "B" or "C." The burden was upon the People to prove beyond a reasonable doubt that they were not in either of those classes, and thereby establish that the securities in question belonged to Class "D" as alleged in the information and having failed to make such proof, the judgment is erroneous. *People v. Revesz, supra*; *Piot v. Chartrand*, 237 Ill. App. 117.

However, the People also contend that there is other proof in the record showing conclusively that these bonds were not Class "C" securities. The record does show that the property of the Midland Power Company "consists of a power line and equipment" extending from Fosston to Terrebonne, Minnesota, and that the company began the construction of that power line "about July 15, 1923," and being in need of funds for that purpose negotiated for the sale of bonds secured by a first mortgage on its property. The bonds here involved were part of that issue. It thus appears affirmatively that these bonds did not belong to Class "C" for such proof shows that they were not "issued by a person, corporation, firm, trust, partnership or association owning a property, business or industry which has been in continuous operation not less than two years and which has shown during a period of not less than two years prior to the filing of the statement" provided for in the statute "average annual net profits," as specified in the statute [Cahill's St. ch. 32, ¶ 259], because the sales involved in this case took place on February 7, 1924, less than seven months after the company began the construction of its power line.

While we are of the opinion that the proof just referred to made out a case in behalf of the People, to the effect that these securities did not belong to Class

"C," and while it was apparent from the face of them that they did not belong to Class "B" as defined in section 5 of the act [Cahill's St. ch. 32, ¶ 258], we are further of the opinion that the People failed to show that the securities did not belong to Class "A." The decree entered in the circuit court of Cook county, in a suit by the ancillary receiver against Weckler and the Power Company, found that the property of the company consisted of "a power plant and equipment." The trust deed executed by the company to secure these bonds conveyed, with other property, "all structures, buildings, power stations, sub-stations, distribution systems, transmission lines, farm line branches and service lines,  *   *   *  and all other property and appurtenances used in connection therewith, of any nature whatsoever, in which the company has any right, title and interest," and also "all other property of a nature to that hereinabove described, real or personal,  *   *   *  now owned or that may be hereafter acquired by the company." In the course of the provisions contained in that deed, the company covenanted that "it is well seized of all the tangible property hereby conveyed, both real and personal." With such a showing in the record it would seem clear that the Midland Power Company was seized of some real estate but how much or of what value the record does not show. From all that appears in the record it may well be that its real estate conveyed by the deed above referred to, and thus made security for these bonds, had a value equal to or greater than the aggregate value of the bonds issued. In that case the bonds might qualify as Class "A" securities. If that were true the bonds could not belong to Class "D" as alleged in the complaint. Such being the situation, the People failed to prove such facts, as, in our opinion, were necessary to establish the offense charged.

The People further contend that the evidence discloses that the bonds were Class "D" securities within

the purview of the act because the evidence shows that the bonds in question were secured by a mortgage upon a leasehold interest, and since they did not have upon their face the legend, in red letters, as required by paragraph 7 of section 4 of the act [Cahill's St. ch. 32, ¶ 257, subd. 7], they were not Class "A," "B" or "C" securities. With this contention we are unable to agree. Paragraph 7 of section 4 (above quoted) provides that where the securities are bonds, the payment of which is secured by a mortgage lien on a leasehold, the mortgage and bonds secured thereby shall bear across the face and text thereof a legend in red letters not less than one-half inch in height, stating that the mortgage is on a leasehold. We think the meaning of this provision is that where a mortgage given to secure the payment of bonds is on a leasehold interest of real estate, that the bonds and mortgage shall bear the legend mentioned. But that this does not apply where the leasehold covered by the mortgage is not a leasehold of real estate. In the instant case we think it appears from the mortgage given to secure the bonds in question that it does not cover a leasehold of real estate or a leasehold of any other kind because the trust deed provided that part of the property conveyed is a "lease agreement and franchise" to supply electric energy, which agreement and franchise was entered into between Bartlett and the village of Fosston. This mortgage we think does not come within the purview of paragraph 7 of section 4 above quoted, therefore the statute did not require that the bonds and trust deed in question bear the legend mentioned in the act.

Complaint is made that the amount of the fine imposed against the defendant is so excessive under the circumstances of the case as to warrant a reversal of the judgment on that ground. Section 29 of the Illinois Securities Law [Cahill's St. ch. 32, ¶ 282] provides for the penalty in the instant case. By that sec-

tion it is provided that where an agent, solicitor or broker sells securities of Class "D" without the provisions of the act having been complied with, he shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars ($100) and not more than five thousand dollars ($5,000) for the first offense. In the instant case the penalty imposed was the maximum provided by the statute. The evidence shows that before the defendant sold the bonds in question application was made to him by Weckler to loan him money with the bonds as collateral. This the defendant refused to do. The evidence further shows that the State Bank of Chicago had loaned Weckler $6,500, taking the $65,000 of bonds as collateral security; that afterwards upon some investigation Byllesby & Company loaned Weckler, on these bonds, $15,000, and after this the defendant loaned Weckler $19,000 on them. This indicates that the defendant had considerable faith in the value of the bonds, and we think this fact should have been taken into consideration by the court in fixing the penalty in the instant case, although it has been held that where the punishment imposed is within the limits prescribed by the statute, the judgment ought not to be reversed, because the amount of the penalty is committed to the discretion of the trial judge. But we think that in the instant case the defendant ought not to have been given the maximum penalty when all of the evidence is considered even if it had been such as to warrant a finding of guilty.

For the reason that the People failed to prove that the securities which the defendant sold were Class "D" securities, the judgment of the municipal court of Chicago is reversed and the cause remanded.

*Reversed and remanded.*

TAYLOR, P. J., and THOMSON, J., concur.