The People of the State of Illinois on information of Edward J. Brundage, Attorney General, Relator, Defendant in Error, v. Mathias R. Revesz and Emory R. Fodor, Defendants below. Emory R. Fodor, Plaintiff in Error.

Gen. No. 27,477.

1. CRIMINAL PROCEDURE—*sufficiency of conclusion of information not in exact words of constitution.* An information which concludes with the words "contrary to the peace and dignity of the People of the State of Illinois" is not defective under the constitution of 1870, art. 6, sec. 33, providing that all informations shall conclude "against the peace and dignity of the same," since the words "against" and "contrary to" are legally synonymous as the former is used in the constitution, and the antecedent of "same" in the constitution is the phrase "People of the State of Illinois."

2. CORPORATIONS—*transfer of corporate stock in extinguishment of existing indebtedness as unlawful sale under Securities Act.* A sale of corporate stock in violation of the Illinois Securities Act of 1919, making it unlawful to sell class "D" securities without first complying with the provisions of the act, is established by ·evidence that defendant transferred the certificates of stock in consideration of certain promissory notes executed to the buyer of the stock several months previous to the sale of the stock as security for the payment of a personal loan made by the buyer to a codefendant, that the defendant and his codefendant, the maker of the notes, represented to the buyer that the stock was company stock, although it was the property of the maker of the notes, and that the stock was received and the notes transferred by the buyer in extinguishment of the codefendant's indebtedness.

3. CORPORATIONS—*sufficiency of proof of illegal sale of stock under Blue Sky Law.* Corporate stock sold by defendant is not shown beyond a reasonable doubt to have been a class "D" security within the provisions of the Securities Act of 1919, secs. 3, 8, Cahill's Ill. St. ch. 32, ¶¶ 256, 261, defining as securities of that class those based on prospective income, and also all securities not falling within the other classifications of section 3, within the allegation of an information charging defendant with selling class "D" securities without first complying with the requirements of the Securities Act, where the evidence shows that defendant sold stock of a specified foreign corporation, and the facts pertaining to the· incorporation of the company and its purposes, but there is no evi-

dence tending to show what the stock or the value thereof was based upon nor as to the financial condition of the company or its operations.

4. CRIMINAL PROCEDURE—*information charging crime in conjunctive where statutory prohibition is in disjunctive.* An information charging defendant with violation of the Securities Act of 1919 in that he did "offer for sale and sell" certain corporate stock without first complying with the provisions of the act is not defective although the act defines the criminal act as offering for sale "or" selling.

5. CRIMINAL PROCEDURE—*when instruction as to proof of venue erroneous.* In a criminal prosecution for violation of the Securities Act of 1919 by the unlawful sale of corporate stock without first complying with the requirements of the act, it was error to instruct the jury that if it believed beyond a reasonable doubt that the defendant "committed the offense charged in the information," that if the facts and circumstances proven at the trial convinced them that it occurred in the county in which the venue was laid, "then the venue is sufficiently proven to justify a verdict of guilty," where the information charged that. defendant did "offer for sale and sell" the stock in question and the evidence of a sale in Illinois was insufficient to justify the submission of that question, it having been shown that the sale was made in Indiana.

Error by defendant to the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1922. Reversed. Opinion filed June 20, 1923. Rehearing denied June 30, 1923.

C. H. McDERMOTT, for plaintiff in error.

EDWARD J. BRUNDAGE, for defendant in error; CHARLES C. BARTLETT and ADA M. CARTWRIGHT, of counsel.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The plaintiff in error, Emory R. Fodor, having been adjudged guilty of violating the Illinois Securities Law of 1919, in offering and selling certain securities defined therein as securities in class "D" without having complied with the provisions of the law relating to securities of that class, prosecutes this writ of error.

The amended information filed by the Attorney Gen-

eral contains substantially the following charges: that one Revesz and Fodor, of Chicago, the former being president and the latter treasurer of the Dakota Coal Mining Corporation, did on or about March 26, 1920, in Chicago, unlawfully and wilfully then and there invite offers for certificates of shares of capital stock of that corporation by personal solicitation and otherwise, and did then and there unlawfully and wilfully offer for sale and sell 410 shares of the stock of that corporation to one Joseph Enzsol, for which he was induced to sign and transfer to the corporation four $1,000 mortgage notes, the said Emory R. Fodor and Mathias R. Fodor having previously negotiated a loan with Enzsol and received from him $4,000 in cash, "the said notes and mortgage being assigned, transferred and delivered to said Mathias R. Revesz, as president, and Emory R. Fodor, as treasurer, of the said Dakota Coal Mining Corporation for the said company and its uses in payment of said four hundred and ten (410) shares of the treasury stock of said company, said stock and certificates of shares of the capital stock of the said Dakota Coal Mining Corporation being then and there a security, the inherent qualities of which did not then and there assure their sale and disposition without the perpetration of fraud;  *  *  * the said stock and certificates of shares of said corporation,  *  *  * the inherent qualities of which, or in the nature of one or both parties to the sale thereof, did not then and there assure their sale and disposition without the perpetration of fraud; said stock and certificates of shares of said corporation being a security not then and there based on established income but being then and there a security based on prospective income and known as a security in class D as defined in and under the provisions" of an Act relating to the sale and disposition of securities; that Revesz and Emory R. Fodor and the said corporation had not first filed or caused to be filed with the Secretary of State the statements and documents required

to be filed by section 9 of the aforesaid Act [Cahill's Ill. St. ch. 32, ¶ 262], all of which it is stated was "contrary to the form of the statute in such case made and provided, and contrary to the peace and dignity of the People of the State of Illinois."

No process was served upon the defendant Mathias R. Revesz. The defendant, Emory R. Fodor, was arrested upon a warrant issued out of the municipal court of Chicago and pleaded not guilty to the charges contained in the information and gave bond for his appearance at the trial. There was a motion to quash, which was overruled, and, subsequently, a trial before a jury.

The evidence showed substantially the following: The defendant, Emory R. Fodor, was, at the time of the offense in the information and prior thereto, a director and treasurer of the Dakota Coal Mining Corporation, an Indiana corporation, capitalized for $150,000. Revesz was a director and president of that corporation. No petition or statement was ever filed for that corporation with the Secretary of the State of Illinois. The object of the Dakota Mining Corporation, according to the articles of incorporation, was to acquire by purchase, or lease, or otherwise, real estate for the purpose of prospecting for and obtaining coal and to own, maintain and operate coal mines; to sell coal at wholesale and retail, build buildings, erect structures and other buildings incident thereto and to sell coal at wholesale in the State of Indiana and other states. Its principal place of business was Gary, Indiana.

Joseph Enzsol, who lived at 6408 Langley avenue, Chicago, and had known Fodor for about five years, in the early part of November, 1919, loaned Revesz $4,000 of his own money, and received therefor four $1,000 notes and a real estate mortgage, on a certain building situated in Gary, Indiana. The notes were signed by Revesz and were due in three months. Sometime in January, 1920, Fodor talked with Joseph

Enzsol about the coal mine property of the Dakota Coal Mining Corporation. Veronica Enzsol, wife of Joseph Enzsol, testified that Fodor, whom she had known since he was eight years old, came to their house in Chicago and spoke to her and her husband about a coal mine that was located in Dakota, advocating an investment in it, and suggested that her husband, Joseph Enzsol, should go out and look at the property with him; that they, Fodor and her husband, did go out and stayed three days and that after they came back Fodor telephoned her and asked her if she was ready to buy the shares and that she said, "If you will assure me and guarantee that they are all right I will do it." She further testified that she bought $4,000 worth of the stock; that that was after the $4,000 mortgage had been made. She also testified that the stock that was received was company stock and, on cross-examination, when asked whose money it was that was loaned to Revesz, for which the notes were received, she answered that it belonged to her husband and herself. Further, that the original loan was for three months; that when she called to get the money back he told her that the coal business was a money making proposition. Also, that when the certificates of stock were delivered and she asked Fodor why the stock was made out in the name of Revesz, Fodor said, "Because that is the president's name, and all stocks go that way. It is the same way," that Fodor told her it was company stock. She further testified, on cross-examination, that after her husband went out to North Dakota and came back, he went to Gary and got the two certificates of stock and showed them to her; that that was about March 17 or 18, 1920; that he then took the notes and the mortgage out to Gary.

The evidence of her husband, Joseph Enzsol, is to the effect that, after talking the matter over with Fodor, he went to Dakota about February 21, 1920, to look at the property; that after he and Fodor came

back, Fodor called him up and asked him to meet him in Gary; that he went out to Fodor's house; that Fodor took him to Revesz's office; that they told him "they got $40,000. I thought if they got that much money I would join." He further testified that he got two certificates of stock which were handed to him by Revesz for his mortgage papers; that he was told that they had the right to sell shares in this State. On that subject, the witness' testimony is contradictory and confusing. On cross-examination, he testified that the coal company was first mentioned to him about February 25, 1920, by Fodor; that subsequently he met Fodor and Revesz twice in Gary; that he talked with Fodor three or four times a week between February 25, 1920, and when he turned over the notes to him; that the two certificates of stock were given to him in Gary by Fodor, who had received them from Revesz; that he turned over the notes four days later in Gary; that he again went out to Gary to a meeting with Revesz and Fodor and talked about the company; that he did have some talk with one Kinney, who also went out to North Dakota with him, and two salesmen for the company about buying stock in the coal company and further testified that he, himself, induced a girl by the name of Pachmeyer and another by the name of Kish to invest in the company; also, that he distributed two or three circulars of the company. He further testified that after he had been out to North Dakota he "was satisfied it was all right if they had some money"; that he went ahead and exchanged his notes for stock and "thought it would be all right."

The son and daughter and the sister of Mrs. Enzsol testified that they all heard Fodor talk at the Enzsol's home in Chicago and advocate the company. Anna Enzsol, the daughter, testified she heard Fodor in February, 1919, talking about the Dakota Coal Mining Company in their house at 6408 Langley avenue, and say that they would make money if they would invest in it. Irving Enzsol, a son, testified that he heard

Fodor at their house talk about the company and say that they would be millionaires and "we would have a lot of money and I would be in the office." Mrs. Kish-Elmi, a sister of Mrs. Enzsol, testified that she lived with her sister; that Fodor came to their house and talked about the coal mine; that he said it would be very good for them as they had a crippled boy and he could work in the office; that he told her, the witness, that the mine was a very good one and that they would get rich from the mine; that after her sister got her stock she also subscribed for $2,000 worth of stock; that she had had some dealings with Fodor and had loaned him some money; that the certificates of stock which she got were made out in the name of Revesz; that of all the money which she let him have she received back $200; that her subscription altogether amounted to $2,000.

There was testimony offered on behalf of the defendant by two Parichy brothers, nephews of Fodor, and also an affidavit of one Kenney, who was unable to be present at the trial. It was stipulated that if Kenney were present at the trial he would testify that Joseph Enzsol in the latter part of February, 1920, told him that Fodor told him Enzsol "not to try to sell any stock in Illinois; that the North Dakota Coal Mining Corporation had no license to sell stock in Illinois." Further, that Enzsol stated to Kenney that he had examined the coal mining property in North Dakota and that "when he returned to Chicago he would like to have stock in the mining company," and, "as soon as I get my money out of the Revesz' notes I will put it into stock of the corporation." Also, that about March 1, 1921, in Gary, Enzsol stated that he was going to see Revesz and see if he could not get some of Revesz's stock for the notes.

The Parichy brothers both testified that they were present with Enzsol at the house of Fodor in Gary about the middle of February and that Enzsol said he would like to invest some money in the mine but that

Fodor told him if he wanted to invest he should first go out there and see it himself and find out if it was worth investing in.

The evidence shows that two certificates of stock, each for 200 shares—par value $10—of the Dakota Coal Mining Corporation were issued to Revesz on February 17, 1920, and assigned in writing by Revesz to Joseph Enzsol on March 1, 1920.

At the close of the evidence the court instructed the jury and on July 12, 1921, a verdict was rendered finding the defendant, Fodor, guilty in manner and form as charged in the information. On July 25, 1921, after overruling a motion for a new trial and in arrest of judgment, the defendant was sentenced to confinement for nine months in the county jail and also fined $4,000 and costs.

(1)  It is contended on behalf of the defendant that the information does not conclude as provided in the constitution of the State of Illinois, section 33 of article 6. The constitution of 1870 provides that: "All process shall run: In the name of the People of the State of Illinois; and all prosecution shall be carried on: In the name and by the authority of the People of the State of Illinois, and conclude: Against the peace and dignity of the same." The information in this case was brought on behalf of the People on information of the Attorney General and concludes "contrary to the form of the statute in such case made and provided, and contrary to the peace and dignity of the People of the State of Illinois." The question arises whether the words "contrary to the peace and dignity of the People of the State of Illinois" are equivalent of the express words used in the constitution, "against the peace and dignity of the same." The antecedent of the word "same" is the phrase "People of the State of Illinois" so that all that is left of the contention is the question whether the words "contrary to" used in the information are under the circumstances legally synonymous with the

word "against," used in the constitution. It is our judgment, bearing in mind the definitions given by the best lexicographers of the words "against" and "contrary to," and considering their context, they are of equal import, and that the contention of counsel for the defendant is untenable.

(2) It is contended on behalf of the defendant that the evidence shows that Enzsol exchanged four promissory notes, which had been given him by Revesz the latter part of 1919, for the certificates of stock in question, and that the notes being exchanged for stock, no such sale was made as would be a violation of the law. There is no doubt but what the evidence does show that the notes in question were given in the early part of November, 1919, by Revesz for money which had already been loaned to him by Enzsol, and that when in the early part of March, 1920, in Gary, Indiana, Fodor delivered to Enzsol the two certificates of stock which he had received from Revesz, no money changed hands, but, on the other hand, four days later Enzsol went to Gary and delivered the four notes as a consideration for the two certificates of stock. Whether or not the notes were overdue at the time they were exchanged is not definitely shown. Under the circumstances, however, it is our judgment that the transfer of the notes, which were an evidence of indebtedness to Enzsol for the two certificates sold to him by Fodor or Revesz or the company, constituted a transaction in the nature of a sale.

Under the terms of the Uniform Sales Act "The price may be made payable in any personal property." (Section 9.) [Cahill's Ill. St. ch. 121a, ¶ 12.] And, further, "A sale of goods is an agreement whereby the seller transfers the property in goods to a buyer for a consideration called the price." (Section a.) Under that act it would seem that the transaction in question constituted a sale of the certificates of stock. Further, even at common law, as the notes were merely evidence of an indebtedness the agreement to buy

400 shares of stock and pay for it by an extinguishment of a $4,000 indebtedness, would be a sale.

(3)  It is contended on behalf of the defendant that the evidence failed to show that the stock, alleged to have been sold, was a class "D" security as charged in the information.  The Illinois Securities Act under which the information was filed defines a security as including stocks, bonds, etc.  Under section 3 of the Illinois Securities Act [Cahill's Ill. St. ch. 32, ¶ 256] securities are divided into four classes as follows:

"(1)  Securities, the inherent qualities of which assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'A';

"(2)  Securities, the inherent qualities of which, or in the nature of one or both parties to the sale thereof, assure their sale and disposition without the perpetration of fraud, which shall be known as securities in Class 'C';

"(3)  Securities based on established income, which shall be known as securities in Class 'C';

"(4)  Securities based on prospective income, which shall be known as securities in Class 'D.' "

The act, in sections 4, 5, 6 and 7 [Cahill's Ill. St. ch. 32, ¶¶ 257-260], states what securities shall constitute classes A, B and C, and in a measure what they are, and in section 8 [Cahill's Ill. St. ch. 32, ¶ 261] it is provided that "all securities other than those falling within class 'A,' 'B,' and 'C,' respectively, shall be known as securities in class 'D.' "

The information recites that the securities which were offered for sale and sold by the defendant were 410 shares of the treasury stock of the Dakota Coal Mining corporation, "the inherent qualities of which * * * did not then and there assure their sale and disposition without the perpetration of fraud"; that the stock of the corporation was not a security based on an established income but "based on prospective income and known as a security in class 'D' as defined in the act."

The evidence shows that the company was incorporated in Indiana on February 4, 1920, with a capital stock of $150,000, consisting of 15,000 shares of $10 each; that its purpose was to acquire by purchase, or lease, or otherwise, real estate for the purpose of prospecting for and obtaining coal and to own, maintain and operate coal mines, to erect buildings incident thereto and to sell coal in the State of Indiana and elsewhere.

It is urged on behalf of the State that the stock was based on prospective income and did not come under any of the exemptions and, therefore, belonged to class D.

Beyond the recitation of the facts pertaining to the incorporation of the company and its purpose, no evidence was offered on behalf of the State to show whether or not the stock in question belonged to classes A, B or C. Quite obviously, there being no evidence whatever as to the history of the Dakota Coal Mining Corporation either as to its assets or liabilities, its solvency or insolvency or in what way, if any, its stock was dealt in, it cannot be said that it was proven beyond a reasonable doubt that the defendant was guilty —when he took part in offering and in selling to Enzsol 400 shares of the stock of the Dakota Coal Mining corporation—of "selling or offering to sell" a security in class D in violation of the provision of the Illinois Securities Act.

In support of the conviction of the defendant, counsel urged that the stock could have been nothing but a class D security as it was based on prospective income and did not come under any of the exemptions. There is not a word of evidence, however, even tending to show what the stock or the value of the stock was based upon. One of the purposes of the Illinois Securities Act seems to be to prevent deceit in the selling of certain kinds of securities; also, to provide that certain information shall be on file with the Secretary of State and to make it a misdemeanor for any solic-

itor, agent or broker to sell or offer to sell any securities in class D, without compliance with the act. Bearing that in mind, the burden of making proof as to what class, if any, the securities, which the defendant dealt in, belonged, was upon the People and not upon the defendant. But an examination of the record fails to show any evidence on that subject. We may be justified in strongly suspecting that they belong to class D, but that is not enough; that is not proof beyond a reasonable doubt of a material fact.

It is contended on behalf of the defendant that as the information charges both offering and selling it is defective. The exact words of the information are, "offer for sale and sell." To prove the crime charged, therefore, it is necessary to prove both an offering and a selling; and to give the court jurisdiction it became necessary to prove that both took place in this State. The evidence, however, manifestly failed to prove a sale in this State. A proof of an offering in this State and a sale in Indiana does not establish the charge in the information. It is true there was some evidence of a sale in this State but quite obviously insufficient to prove that material fact beyond a reasonable doubt. The statute says "selling or offering to sell," and the information says "offer for sale and sell." In *Blemer v. People,* 76 Ill. 265, the court said: "Where a statute forbids several things in the alternative, it is usually construed as creating but a single offense, and the indictment may charge the defendant with committing all the acts, using the conjunction 'and' where the statute uses the disjunctive 'or'," citing 1 Bishop's Criminal Procedure 819. So, here, the information was good as charging a sale, which would necessarily include an offer, but it would not be good if only an offering were to be proven. If only an offering is to be proven, then the information should not charge a sale. The motion to quash was properly overruled.

It is further contended on the part of the defendant that certain errors were committed in instructing the

jury. The trial judge instructed the jury that if it believed beyond a reasonable doubt ''that the defendant committed the offense charged in the information, that if the facts and circumstances proven at the trial convinced you that it occurred in Cook county, then the venue is sufficiently proven to justify a verdict of guilty as charged in the information.'' That was inapt because the words ''offense charged in the information'' included both offering and selling, and as a matter of fact there was insufficient evidence of a sale in Illinois to justify that question being submitted to the jury.

Being of the opinion that upon the merits the evidence completely fails to show the class to which the securities belong, the judgment is reversed.

*Reversed.*

THOMSON, P. J., and O'CONNOR, J., concur.