(No. 20314.—

J. H. JOCHUM, Appellee, *vs.* THOMPSON ROSS & Co., Appellant.

*Opinion filed October 23, 1931.*

PAM & HURD, (LOUIS S. HARDIN, of counsel,) for appellant.

GEORGE G. KING, for appellee.

HORACE KENT TENNEY, *amicus curiæ*.

Per CURIAM: The appellee, J. H. Jochum, brought an action of assumpsit against the appellant, Thompson Ross & Co., in the circuit court of Cook county and recovered a judgment for $1206.77, from which the defendant appealed to this court, constitutional questions being involved.

The declaration consisted of five counts and in effect alleged two causes of action. The first count was based on an agreement of the appellant to re-purchase from the appellee a promissory note of the Hart Coal Corporation which the appellant had sold to the appellee; the second, third and fourth, on the charge that the provisions of section 20 of the Illinois Securities law were not complied with in the sale of the same promissory note by the appellant to the appellee, and the sale was therefore void at the election of the purchaser and the appellant liable to the purchaser for the amount paid, consideration given or the value thereof, together with attorney's fees; and the fifth consisted of the common counts. The case was decided on the pleadings, the court having stricken out the appellant's amended pleas and affidavit of merits and rendered judgment by default against the appellant, including $200 attorney's fees.

As to the first count of the declaration, appellant, in its affidavit of merits which was stricken, denied any agreement on its part to re-purchase from appellee, as alleged in the first count of the declaration, the note therein mentioned. It further appears from such affidavit of merits

that on March 9, 1925, the appellant caused an issue of $225,000 of the notes of the Hart Coal Corporation to be classified under section 7 of the Securities law as class "C" securities and became authorized to sell them as such. The securities were sold soon thereafter by the appellant and on July 16, 1925, an affidavit showing that fact was filed with the Secretary of State, who delivered to the appellant a memorandum dated July 20, 1925, stating that the appellant had formally qualified said issue of notes under the Securities law and had submitted to the Secretary of State an affidavit averring that all of the notes had been sold, and that the Secretary of State therefore declared that the records respecting qualification under the Illinois Securities law of that issue of notes were thereby closed. Afterward, about March 21, 1927, the appellant re-purchased the note involved in this case, and subsequently sold it, together with other securities, to the appellee in consideration of various other securities then sold and delivered by the appellee to the appellant and of $1864.47 in cash also paid to the appellant by the appellee.

Section 20 and the first paragraph of section 37 of the Illinois Securities law are as follows:

"Sec. 20. So long as any security is sold or offered for sale under the provisions of this act, such person, issuer, dealer, solicitor, agent or broker shall on or before the expiration of each six months' period, from the date of filing the original statements and documents, and oftener if required by the Secretary of State, file new or supplemental statements disclosing:

"(1) The amount of securities sold, the sale price thereof and the amount of cash proceeds received therefor by the issuer;

"(2) All changes in the financial conditions of the issuer or in its management or property, accompanied by a copy of the most recent balance sheet of the issuer showing the financial condition of the issuer at a date not more than

thirty days prior to the date of such filing, and such other facts as the Secretary of State may require.

"Such supplemental statement shall also be accompanied by not less than twenty-five wholly typewritten or printed copies of such summary of such supplemental statement, which summary shall be filed in the office of the Secretary of State.

"Such supplemental statement shall be verified in the same manner as the original statement."

"Sec. 37. Every sale and contract of sale made in violation of any of the provisions of this act shall be void at the election of the purchaser, and the seller of the securities so sold, the officers and directors of the seller, and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable, in an action at law or in equity, upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, the consideration given or the value thereof, together with his reasonable attorney's fees in any action brought for such recovery."

This appeal turns on the construction, applicability and constitutionality of section 20. The appellant contends that section 20 did not require the filing of new or supplemental statements after the entire issue had been initially sold, and if construed to entitle the appellee in this suit to recover against the appellant on account of its failure to file new or supplemental statements, the section is unconstitutional and in violation of sections 8 and 10 of article 1 of the Federal constitution and of the fourteenth amendment to that constitution, and of sections 1 and 2 of article 2 and section 22 of article 4 of the constitution of this State.

If section 20 requires a supplemental statement to be made by the appellant and is constitutional the judgment is right, for no such supplemental statement was made.

The Illinois Securities law as a whole was held constitutional in *Stewart* v. *Brady,* 300 Ill. 425. Its purpose was

evidently to furnish information, to protect credulity and ignorance from deception and imposition and prevent fraudulent and deceitful sales of securities, and also to assure credit and freedom of commerce in such securities as, because of their character, the place and manner of their sale or the character of the seller are subject to the practices of deception and fraud to such a degree as in the judgment of the legislature to require legislation for the protection of purchasers. The act takes into consideration the inherent qualities of the securities affected, the nature of the parties involved in the disposition of the securities and the character of the transactions. Neither all securities nor all transactions nor all persons were brought under the act. It divides securities into four classes, "A," "B," "C" and "D." Securities whose inherent qualities assure their sale and disposition without the perpetration of fraud constitute class "A." Those whose inherent qualities, or the nature of one or both parties to the sale of them, assure their sale or disposition without the perpetration of fraud constitute class "B." Sales of these two classes of securities are in general not subject to the provisions of the act, though there are some exceptions not important in the consideration of this case. Class "C" securities are those which are based on established income derived from a property, business or industry which has been in continuous operation not less than two years and has produced during a period of not less than two years prior to the filing of the statement required by the act average annual net profits, exclusive of all prior charges, in the case of interest-bearing securities not less than one and one-half times the annual interest charge thereon and upon all other outstanding interest-bearing obligations of equal rank; in the case of preferred stock not less than one and one-half times the annual dividend of such preferred stock and all other outstanding stock of equal rank, and in the case of common stock not less than three per cent on all outstanding stock. Class "D" securities include all

securities not included in the other three classes. Classes "C" and "D" securities come within the provisions of the act and can be sold only on compliance with its terms, though the terms are different for the two classes. These terms are, for class "C" the filing of a statement in the office of the Secretary of State stating the law under which the issuer was organized and when; giving the names and addresses of its principal officers and of its directors or trustees; describing the evidences of indebtedness and stock intended to be offered or sold; giving a detailed statement of the issuer's assets, liabilities and income, a profit and loss statement and an analysis of the surplus account. This statement must also give pertinent facts, data and information establishing that the securities to be offered are securities in class "C"—that is, the facts in regard to the property, business or industry of the issuer or owner and its continuous operation for two years or longer by the issuer. At least twenty-five typewritten or printed copies of the statement must be filed with the Secretary of State, and they must bear at the top the expression, "Securities in class 'C' under Illinois Securities law," followed by the expression, "This statement is prepared by parties interested in the sale of securities herein mentioned. Neither the State of Illinois nor any officer of the State assumes any responsibility for any statement contained herein nor recommends any of the securities described below." Other acts are required to be done in regard to both class "C" and class "D" securities, and, when the statements are finally filed in the Secretary of State's office, the issuer, solicitor, agent, broker, dealer or owner may proceed to sell the amount of securities proposed to be sold or disposed of in this State, but no written or printed evidence of compliance with the act may be issued by the Secretary of State.

By section 23 it is provided that no person, owner, dealer, broker, solicitor or agent shall sell or offer for sale securities within this State unless registered with the Secre-

tary of State as owner, dealer and broker or as solicitor or agent, provided that registration shall not be required of anyone engaged solely in making sales specified as exempt in section 5 of the act. Any person, firm, partnership or corporation of good repute, on application to the Secretary of State and payment of the prescribed fee and filing a bond in a sum not less than $2000 or more than $50,000, as required by the Secretary of State, may be registered. The Secretary of State is prohibited from issuing any certificate or written evidence to any person as registered owner, dealer, broker, solicitor or agent, but the finding that any person, firm, co-partnership or corporation may act as a dealer, broker, solicitor or agent takes the form only of entering the name in a suitable record for that purpose, which shall be open to the public. Neither will any certificate of the qualification of the securities be issued by the Secretary of State, but upon the filing by the Secretary of State of the statements and documents required by him, and the oaths, bonds and other documents required by sections 14, 16 and 17, the owner, issuer, broker, dealer, solicitor or agent may proceed to sell the amount of securities proposed to be sold or disposed of in this State.

Section 7, in providing for the qualification for sale of securities in class "C," requires the statement already mentioned to be filed in the office of the Secretary of State, verified by the oath of not less than two credible persons having knowledge of the facts, and to be prepared by parties interested in the sale of the securities.

Section 9 provides that no security in class "D" shall be sold or offered for sale until there shall have been filed in the office of the Secretary of State statements and documents giving the information specifically called for by that section, including: "(13) A statement as to the manner in which the securities are to be offered and sold; (14) If the securities be intended to be offered and sold by the issuer through solicitors, agents or brokers, an irrevocable

contract executed by each such solicitor, agent or broker authorized to offer or sell such securities by or on behalf of the issuer to the effect that the issuer will receive in cash not less than eighty per cent of the proceeds of each sale of the securities without deduction for any commission or expenses, directly or indirectly, and without liability to pay any sum whatsoever as commission or expenses or for services in and about such sales; if the securities shall have been or be intended to be sold to any dealer, solicitor, agent or broker and intended to be by such dealer, solicitor, agent or broker sold to the public for their own account, a statement verified under oath, establishing that the price paid to the issuer was or will be without any fixed or contingent right in the issuer to demand or receive any additional sum on account of such securities or the sale thereof." Such statements and documents must, "except as otherwise provided herein, be verified by the oath of not less than two of the officers of the issuer, if the issuer be a corporation, or by not less than two members of a firm, trust, partnership or association, if the issuer be non-incorporated."

Sections 10, 11 and 12 contain further restrictions which are not material to the point under consideration.

Section 13 provides: "If the statement as to securities in class 'D' discloses that such securities are intended to be offered or sold by the issuer, through a solicitor, agent or broker, a statement giving the names, residences, qualifications, occupations and business experience of such solicitor, agent or broker for a period of ten years prior to the filing, and the name and address of each employer, the period of employment and reason for resignation or discharge, shall be filed in the office of the Secretary of State. The signatures of each and every of such solicitors, agents or brokers, shall be attached to such statement. If after the filing of such statement the issuer shall appoint any additional solicitor, agent or broker to offer or sell such securities before any such additional solicitor, agent or broker,

shall offer or sell any such securities, there shall be filed like statements."

Section 14 provides that after qualification of securities in class "D" by the issuer, any dealer or owner may sell such securities upon compliance with the provisions of that section and sections 15 and 16. Sections 17, 18 and 19 contain other provisions concerning the filing of statements in the office of the Secretary of State, his powers and duties with reference thereto and his authority to require further information, and providing a remedy by judicial review of his action should he decline to file a statement or document presented under the provisions of the act.

Section 20, whose construction is in question in this case, follows these sections, and it seems clear that "such person, issuer, dealer, solicitor, agent or broker" mentioned in section 20 refers to the person, issuer, dealer, solicitor, agent or broker mentioned in the preceding sections who has previously filed statements under sections 7, 9 and 13, which have resulted in the qualification of the stock and the authorization of its sale. The time within which the new or supplemental statements are required by section 20 to be filed is at the expiration of each six months' period from the date of filing the original statements and documents, "so long as any security is sold or offered for sale under the provisions of this act." Securities in class "C" may be sold upon compliance with the conditions mentioned in section 7 of the act, and securities in class "D," after qualification by the issuer in the manner described in the act, may be sold by any owner or dealer upon the filing of the statements and documents required by section 17. After the qualification of the securities for sale in accordance with the provisions of the act they may be sold by the issuer directly, or through such dealers and brokers, solicitors or agents as may be employed for that purpose. In the usual course of procuring money by the sale of securities to the public, the whole issue of securities to be sold by the pro-

prietors of any business, whether manufacturing, mining, commercial, or of whatever character, will be bought or underwritten by a dealer, or several dealers, whose facilities enable them to provide the money required. Whether they act as brokers or as purchasers, upon qualifying the securities under the Securities law they are authorized to sell with entire freedom, except that, so long as any of the securities remain unsold or are offered for sale, the issuers and their dealers and brokers, solicitors or agents at the expiration of each six months' period must file the new or supplemental statements required by section 20. The language of section 20 indicates that the continuing right to sell the securities until the sale of the whole issue is completed depends upon keeping on file in the office of the Secretary of State the information showing the continued qualification of the securities. This requirement is a reasonable regulation, in the exercise of the police power, for the information of original purchasers from the issuer or the issuer's agents and the protection of such purchasers from deceit, misrepresentation, dishonesty, incompetence, ignorance and irresponsibility of persons engaging in the business of disposing of securities of uncertain value whereby the inexperienced and confiding are likely to suffer loss. While the privilege of engaging in a lawful business is the right of every individual, it is subject to the police power and must be exercised in accordance with the requirements of statutes passed in the exercise of that power for the protection of the public.

In our judgment the language of section 20, "so long as any security is sold or offered for sale under the provisions of this act," refers to a sale or offer for sale by the issuer, or his dealers and brokers, solicitors, agents or underwriters, during the progress of their sale, disposition and distribution of the stock to the investing public, and is not applicable after securities completely qualified under the Securities act have passed into the ownership of the invest-

ing public. Upon the completion of that sale and distribution no duty is imposed upon the issuer, or any dealer, broker, solicitor or agent, to make or file any new or supplemental statement disclosing the facts mentioned in section 20. No one is acquainted with the facts unless it is the issuer or some of the issuer's officers or employees, and while the language may be of doubtful meaning, it seems unreasonable to suppose that the legislature intended to require information which was available only to one having knowledge of the internal business affairs of the issuer from the broker or owner who has acquired qualified securities in the ordinary course of business.

The appellee argues against this construction that it will open a door to evasion of the act; that all that will be necessary will be for the person originally interested in the sale of the securities to qualify them under the law and sell the entire issue to a broker or dealer, who can palm them off on the public without restrictions. If the securities are qualified for sale and are sold in good faith under the provisions of the act to one purchaser or a thousand they have become qualified for re-sale generally, but to evade the act would require a colorable first sale bringing the penalties prescribed by the act. The construction given to section 20 opens no door to an evasion of the act.

In the view we have taken of the meaning of section 20 as applied to the facts in this case the constitutional questions argued do not arise.

Appellant's amended pleas and affidavit of merits having stated good defenses to the causes of action set forth in appellee's declaration and affidavit of claim, the judgment of the circuit court is reversed and the cause remanded, with directions to vacate the order striking appellant's amended pleas and affidavit of merits from the files and for other proceedings according to law.

*Reversed and remanded, with directions.*