John H. Taft, Defendant in Error, v. Otte & Company, Plaintiff in Error.

Gen. No. 36,732.

Heard in the second division of this court for the first district at the June term, 1933. Opinion filed March 6, 1934.

ARTHUR J. HUGHES, for plaintiff in error; R. A. BULLINGER and JOSEPH A. GREAVES, of counsel.

JAFFE & GREEN, for defendant in error.

Mr. Justice Scanlan delivered the opinion of the court.

In a trial before the court plaintiff recovered a judgment for $2,000, which included $240 as plaintiff's attorney's fees.

Plaintiff's statement of claim alleges that defendant sold him 20 shares of stock of the Bank of the United States, a corporation, for $1,760; "that the . . . stock was not at the times of the aforesaid sales, securities in Class 'A', Class 'B' or Class 'C', as described in an Act . . . known as 'The Illinois Securities Law'; . . . that the right to sell the aforesaid stock in the State of Illinois, was not granted to the Bank . . . or to any broker, or agent, on the aforesaid mentioned dates . . . ; that neither preceding the sale, or during the sale of said stock, did the Bank . . . or the defendant secure any permit or license from the Secretary of State of Illinois, to sell the aforesaid stock in Illinois; . . . that the Bank . . . is and was on the dates of the aforesaid sales, a foreign corporation existing and doing business under and by virtue of the laws of the State of New York, and that it had not on the dates of the aforesaid sales, nor at any time thereafter complied with the law regulating the admission of foreign corporations to transact business in Illinois, as required by the statutes; . . . that the sale of the stock by defendant to plaintiff . . . was and is utterly void; that . . . by virtue of the Illinois Securities Law, plaintiff is entitled to have and receive from defendant the sum paid by him to defendant, to-wit: —$1,760, together with his reasonable attorneys fees, as provided for in Section 37, of the Illinois Securities Law. . . ."

Defendant's affidavit of merits denies that it contracted, sold and delivered to plaintiff the stock in question, "but alleges . . . that . . . defendant . . . as agent for . . . Taft, did purchase for the account

of Taft and in his behalf certain shares of stock; . . . denies that plaintiff paid to defendant in payment of said stock the sum of $1,760, but alleges . . . that said sum was paid to defendant to reimburse defendant for moneys advanced and expended by defendant for and in behalf of Taft in connection with the purchase of the aforementioned securities; . . . denies that the aforesaid stock was not, at the times of the aforesaid sales, securities in 'Class A,' 'Class B,' or 'Class C,' . . . but alleges . . . that the stock was at the time of said alleged sales a 'Class A' security by reason of the fact that subsection Two of Section Four of 'The Illinois Securities Law,' in so far as it pertains to 'State Banks or Trust Companies of this State' is unconstitutional and void, being discriminatory and creating a special privilege and immunity denied to this defendant. . . ."

Defendant contends that the burden was upon plaintiff to prove by more than a preponderance of the evidence that the securities involved were Class "D" securities, "as alleged in plaintiff's statement of claim," and that plaintiff failed in that regard. Defendant argues that to establish that the securities came within Class "D" plaintiff was obliged to prove that the stock did not fall within Class "A," "B" nor "C." In support of this contention defendant cites *People v. Revesz,* 229 Ill. App. 616; *Piot v. Chartrand,* 237 Ill. App. 117; and *Oppenheimer v. Peabody, Houghteling & Co.,* 270 Ill. App. 240.

The present Illinois Securities Law, enacted in 1919, is a substitute for a previous act, which it repealed. As stated in *Stewart v. Brady,* 300 Ill. 425, 434: "The clearly indicated purpose of the legislature was to protect the public from deceit and prevent fraud in the sale and disposition of stocks, bonds and other securities within the State." In that case will be found a very complete analysis of the four classes of secu-

rities, Class "A," Class "B," Class "C" and Class "D" created by the act.

In *Trakas v. Cokins*, 224 Ill. App. 327, the first division of this court passed upon a case where the sale occurred in February, 1918, and the claim was based upon section 20 of the old act, which provided: "Every sale or contract of sale in violation of sections 1 or 2 of this Act shall be void, and the dealer making such contract or sale must, on request and tender back of any securities received, return the purchase price or any part thereof paid." Section 3 of that act (Call. 1920 Stat. ch. 32, p. 514) provided that the provisions of the act should not apply to the disposal of certain securities, enumerating them. *Although said section 20 contained no provision as to the burden of proof such as is found in subsection 2 of section 37 of the present act,* hereinafter referred to, nevertheless, the reviewing court, after considering the purpose of the legislature in passing the act, held that "to place the burden upon the plaintiff of proving that the stock in question was not exempted under the act would have the effect of destroying the beneficial purpose intended by the legislature when it enacted the statute." The opinion states: "We do not think that the law imposed upon the plaintiff the duty of proving that the stock in question did not come within the exemptions of section 3. If it does, then it may be quite impossible for the courts to enforce a remedy which the legislature appears to have intended by the enactment of section 20 of the Act. . . . Proof of the negative facts that the securities were not listed in a standard manual approved by the Secretary of the State, or that the current price of the stock sold had not been published in the market reports of a daily newspaper or had not been listed upon any organized stock exchange in the United States were facts which in their nature could not have been shown by the plaintiff. These facts

rested peculiarly within the knowlege of the defendant and the law in such circumstances very wisely, and as an exception to the general rule, placed the burden of proving them upon the defendant.'' The opinion in that important case was written by Mr. Presiding Justice Dever and concurred in by JJ. McSurely and Matchett.

As originally enacted, section 37 of the present Act (Hurd's Ill. Rev. St. [1919] ch. 121a) provided: "Every sale and contract of sale made in violation of any of the provisions of this act shall be void and the seller of the securities so sold and each and every solicitor, agent or broker of or for such seller, who shall have knowingly performed any act or in any way furthered such sale, shall be jointly and severally liable upon tender to the seller or in court of the securities sold, to the purchaser for the amount paid, together with his reasonable attorney's fees in any action brought to recover such amount.'' It became evident, however, that if the ordinary rules as to the burden of proof were to govern an action brought under section 37 it would be practically impossible for a plaintiff to obtain relief, and to meet the situation the legislature, in 1921, amended the section by interpolating certain new clauses and by adding four new sections. As stated in *Perkins v. Dole,* 240 Ill. App. 20, 25–6: "The old section 37, as changed, became subsection 1 of the new section 37. The changes were as follows: After the words 'shall be void,' in the second line, the words 'at the election of the purchaser' were added; after the words 'and the seller of the securities so sold,' and before the words 'and each and every solicitor, agent or broker of or for such seller,' the words 'the officers and directors of the seller' were inserted; after the words 'shall be jointly and severally liable' were added the words 'in an action at law or in equity.' Otherwise old section 37 remained substantially the same. *The added subsection 2 of section 37 provides: 'In*

any action, civil or criminal, where the seller or issuer relies for his defense upon any of the exemptions provided for in this Act, the burden of proof to establish such exemption shall be upon such issuer or seller.' The added subsection 5 of section 37 provides: 'In any prosecution, action, suit or proceeding before any of the several courts of this State based upon or arising out of or under the provisions of this Act, a certificate under the seal of State, duly signed by the Secretary of State, showing compliance or non-compliance with the provisions of the Illinois Securities Law, respecting the securities in question or respecting compliance or non-compliance with the provisions of the Act by any issuer, solicitor, agent, broker, dealer or owner, shall constitute *prima facie* evidence of such compliance or of such non-compliance with the provisions of this Act, as the case may be, and shall be admissible in evidence in any action at law or in equity to enforce the provisions of this Act.' '' (Italics ours.)

As to the instant contention of defendant: The act provides (section 8) that all securities other than those falling within Class ''A,'' Class ''B'' and Class ''C'' shall be known as Class ''D'' securities, and it is the theory of defendant that in order for plaintiff to prove that the securities in question were Class ''D'' securities it was necessary for him to prove that they were not Class ''A,'' Class ''B'' nor Class ''C'' securities. This theory finds support in *People v. Gillett,* 243 Ill. App. 41, 51; *Piot v. Chartrand, supra,* and *Oppenheimer v. Peabody, Houghteling & Co., supra,* and at first blush it seems to be sound. But after an examination of the pertinent parts of the act we have become convinced that it is unsound.

As to the cases cited by defendant: In *People v. Revesz, supra* (decided by the third division of this court), the defendant was charged in an information with having unlawfully sold 410 shares of certain stock in violation of the Illinois Securities Act, and he en-

tered a plea of not guilty to the information. *The alleged sale was made more than 15 months before the enactment of the amendment to section 37,* and from an inspection of the record and briefs we find that the case was tried upon the theory that it was governed by the general rules applicable to criminal procedure. The jury were instructed that as it was not a civil case, the rule as to the preponderance of the evidence did not apply and that the burden was upon The People to establish by evidence beyond a reasonable doubt the existence of every element necessary to constitute the offense charged. No question was raised by the prosecuting attorney in the trial court, nor by the attorney general in this court, as to the correctness of the procedure followed. *Piot v. Chartrand, supra,* involved a civil proceeding under the act, and the court cites only the *Revesz* case in support of its ruling that the burden rested upon the plaintiff "to prove by a preponderance of the evidence that this stock belonged to either class C or class D, as defined by the Securities Act." In the *Piot* case the only plea filed was the general issue. This plea did not set up a good defense and it might have been stricken upon motion. (See *Jochum v. Ross & Co.,* 345 Ill. 587.) In *People v. Gillett, supra,* also decided by the third division of this court, it was held (p. 51): "The burden was upon the People to prove beyond a reasonable doubt that they [the bonds in question] were not in either of those classes [Class "A," "B" or "C"], and thereby establish that the securities in question belonged to Class 'D' as alleged in the information and having failed to make such proof, the judgment is erroneous. *People v. Revesz, supra; Piot v. Chartrand,* 237 Ill. App. 117." In the *Gillett* case the information charged that the securities sold were Class "D" securities and the sole plea was not guilty. In *Oppenheimer v. Peabody, Houghteling & Co., supra,* decided by the first division of this court, the plaintiff

alleged in his statement of claim that the bonds sold were not Class "A," Class "B" nor Class "C" securities but were Class "D" securities. The defendant, in its affidavit of merits, denied that the bonds were Class "D" securities *and alleged that at the time of the sale and exchange of the bonds they had been qualified for sale by the defendant under the Illinois Securities Law as Class "C" securities,* and averred that the transaction was legal in every respect. The reviewing court held that, despite the defense interposed in the affidavit of merits, the burden was upon the plaintiff to prove that the securities in question were Class "D" securities, and cited *People v. Revesz, supra; Piot v. Chartrand, supra,* and *People v. Gillett, supra,* in support of its ruling. It thus appears that the *Piot, Gillett* and *Oppenheimer* cases are based upon the ruling in *People v. Revesz,* and, as we have heretofore shown, that case had no bearing on the question determined in the *Piot, Gillett* and *Oppenheimer* cases.

In *Dobal v. Guardian Finance Corp.,* 251 Ill. App. 220, 224, decided by the first division of this court, it was said: "Further, according to the provisions of paragraph 2 of section 37 of that act, Cahill's St. ch. 32, ¶ 290, subd. 2, the burden of proof is put upon the seller or issuer to establish exemption from the act if exemption is claimed." JJ. McSurely and O'Connor concurred in the opinion, written by Mr. Justice Matchett. In *Abrams v. Love,* 254 Ill. App. 428, 436, the Appellate Court of the second district held: "To place the burden upon the plaintiff of proving that the stock in question was not exempted under the act would have the effect of destroying the beneficial purpose intended by the legislature when it enacted the statute." After calling attention to the important fact that the act provides that "all securities other than those falling within classes 'A,' 'B' and 'C,' respectively, shall be known as securities in class 'D,' " the court states that a burden practically impossible

to carry would be placed upon the plaintiff if he were obliged to prove that the stock did not fall within Classes "A," "B" and "C" in order to establish that it did fall within Class "D." In the recent case of *Hudson v. Silver*, 273 Ill. App. 40, decided by the first division of this court, the court said: "The burden is upon the defendant in these cases to prove that the stock was qualified. *Abrams v. Love*, 254 Ill. App. 428," but the opinion contains the further statement that "it seems to be conceded that the stock was not qualified and was Class 'C.' "

In *Jochum v. Ross & Co., supra*, certain counts of the declaration charged, *inter alia*, that the provisions of section 20 of the Illinois Securities Law were not complied with in the sale of the promissory note by the defendant to the plaintiff. The defendant filed amended pleas and an affidavit of merits. To quote from the opinion: "It further appears from such affidavit of merits that on March 9, 1925, the appellant caused an issue of $225,000 of the notes of the Hart Coal Corporation to be classified under section 7 of the Securities law as class 'C' securities and became authorized to sell them as such. The securities were sold soon thereafter by the appellant and on July 16, 1925, an affidavit showing that fact was filed with the Secretary of State, who delivered to the appellant a memorandum dated July 20, 1925, stating that the appellant had formally qualified said issue of notes under the Securities law and had submitted to the Secretary of State an affidavit averring that all of the notes had been sold, and that the Secretary of State therefore declared that the records respecting qualification under the Illinois Securities law of that issue of notes were thereby closed. Afterward, about March 21, 1927, the appellant re-purchased the note involved in this case, and subsequently sold it, together with other securities, to the appellee in consideration of various other securities then sold and delivered by the appel-

lee to the appellant and of $1864.47 in cash also paid to the appellant by the appellee." In the trial court the case was decided upon the pleadings, the appellant's amended pleas and affidavit of merits were stricken and judgment by default was rendered against it. The decision in the Supreme Court turned upon the sole question as to whether or not the amended pleas and affidavit of merits set up a good defense to plaintiff's cause of action, and the court, after reviewing the requirements of section 20 and the facts set up in appellant's amended pleas and affidavit of merits, held: "Appellant's amended pleas and affidavit of merits having stated good defenses to the causes of action set forth in appellee's declaration and affidavit of claim, the judgment of the circuit court is reversed and the cause remanded, with directions to vacate the order striking appellant's amended pleas and affidavit of merits from the files and for other proceedings according to law." In that case the appellant contended that "section 20 did not require the filing of new or supplemental statements after the entire issue had been initially sold," and in passing upon this contention the court said, *inter alia:* "If section 20 requires a supplemental statement to be made by the appellant . . . the judgment is right, for no such supplemental statement was made." It would seem to follow from this decision that a defendant's pleas and affidavit of merits must set up a good defense to the plaintiff's cause of action, as alleged.

Subsection 2 of section 37 provides: "In any action, civil or criminal, where the seller or issuer relies for his defense upon *any* of the exemptions provided for in this Act, the burden of proof to establish such exemption, shall be upon such issuer or seller." The legislature saw that the remedy given the purchaser under section 37 as originally enacted, was difficult, if not impossible, to enforce, and subsection 2 and subsection 5 were enacted to give vitality and effect to the

remedy. Section 4 specifically provides that securities in Class "A" and sales of them are *exempt* from the provisions of the act, and section 5 provides that securities in Class "B" and sales of them, when disposed of by the persons and in the manner provided by that section, are also *exempt* from its provisions. The act provides that *all* securities in Class "C" and Class "D" are subject to the provisions of the act and can be sold only upon compliance with its terms. In *Stewart v. Brady, supra,* the court, in analyzing the various kinds of securities in Classes "A" and "B," refers to them as "exemptions" from the applicability of the act. In *People v. Love,* 310 Ill. 558, the indictment charged the defendants with the sale of Class "D" securities without compliance with the Securities Act. Counsel for defendants there contended that securities which fall under Class "D" may be treated as under Class "B" where the circumstances of the sale are such as to come within some one provision of section 5 relating to sales of securities in Class "B," and they argued that the indictment did not state a cause of action because it did not negative the exemptions enumerated in section 5 of the act. The court held that it was unnecessary to decide whether Class "D" securities may be exempt as under Class "B," because the evidence did not show the sale to come within the provisions of paragraph 2 of section 5 of the act, but in passing upon the sufficiency of the indictment, the court said: "Nor is it necessary that the indictment negative the exemptions enumerated in section 5 of the statute. The offense lies in selling Class 'D' securities without full compliance with the Securities law. If there has not been a compliance with the law plaintiffs in error are guilty. If they did not make such sales, or in making them complied with the statute, such is a matter of defense which will defeat the action. The indictment is sufficient."

It seems clear to us that the language used in subsection 2, viz., "*any* of the exemptions provided for in this Act," can relate to only the sales of securities in Class "A" and Class "B." To show the uncertainty that follows a different interpretation: In *Piot v. Chartrand, supra,* Mr. Justice Higbee states (p. 120): "The word 'exemption' as used in the second paragraph of said section cannot apply to classes A and B stock as no restraints are placed upon the sale of the same by the law. But there are certain conditions provided for by the Act under which securities of both classes C and D may be sold without violating the Act and these conditions constitute the exemptions referred to in the second paragraph of section 37." As "securities in Class 'C' and Class 'D' are subject to the provisions of the act and can only be sold upon compliance with its terms" (*Stewart v. Brady, supra,* p. 430), this interpretation, in our judgment, is clearly wrong. In *Oppenheimer v. Peabody, Houghteling & Co., supra,* Mr. Justice O'Connor states: "We think that paragraph 2 of section 37, above quoted, does not place the burden upon the defendant to prove that the bonds in question belonged to any particular class of securities but applies to exemptions some of which are those mentioned in section 5 of the act. *Piot v. Chartrand,* 237 Ill. App. 117. Under section 5 it is provided that under certain conditions one may sell his own property for his own account; that capital stock of a corporation when sold to its stockholders without the payment of any expense or commissions to agents, solicitors or brokers, securities when sold by any bank or trust company, etc., securities when sold to any corporation or broker or dealer in securities, when securities are sold at judicial sale or by a receiver in bankruptcy at public auction, need not be qualified under the act. Section 5, it is true, refers specifically to Class B securities, and

section 4 of the act, in defining Class A securities, among other things, defines one class of A securities as those listed and dealt in on the New York, Boston and Chicago exchanges; and it has been held that if in a particular case the defendant seeks to show that stocks were listed on such exchanges to escape liability, the burden is on the defendant to show that fact. *Trakas v. Cokins,* 224 Ill. App. 327. We think the foregoing are some of the exemptions referred to in paragraph 2 of section 37.'' It will be noted that Mr. Justice O'Connor does not follow Mr. Justice Higbee's interpretation of the subsection. Section 4 enumerates and defines all the securities exempt under Class ''A,'' and section 5 enumerates and defines all the securities exempt under Class ''B.'' Mr. Justice O'Connor concedes, apparently, that certain securities in Class ''A'' and Class ''B'' are ''exemptions referred to in paragraph 2 of section 37.'' We can find no warrant in the language of subsection 2 to justify a holding that the rule stated therein applies to certain securities sold under Class ''A'' and Class ''B'' but does not apply as to others. If such a holding be followed the determination of the securities to which the rule does and does not apply becomes, in our judgment, mere guesswork. As we have heretofore stated, in *Trakas v. Cokins, supra,* cited, apparently with approval, in the *Oppenheimer* case, the claim was based upon section 20 of the old act, now repealed, which contained no provision as to the burden of proof such as is found in subsection 2 of section 37 of the present act. Moreover, the court there held that the law did not impose upon the plaintiff ''the duty of proving that the stock in question did not come within the exemptions of section 3,'' and that section contained all of the exemptions under the old act. Nor is *Piot v. Chartrand* an authority in support of the statement that paragraph

2 "applies to exemptions, some of which are those mentioned in section 5 of the Act."

Defendant states that plaintiff alleges in his statement of claim that the stock in question was not a Class "A," Class "B" nor Class "C" stock, and contends that plaintiff has not proved this allegation by more than a preponderance of the evidence. The argument is, that having alleged that the stock was not a security in Class "A," "B" nor "C," it was necessary for plaintiff to prove that allegation. As we have heretofore stated, the act provides (section 8) that all securities other than those falling within Class "A," "B" or "C" shall be known as Class "D" securities. An allegation that the stock was a Class "D" security would have been sufficient. (See *People v. Love, supra.*) Alleging that the stock was not a Class "A," "B" nor "C" security is but another way of alleging that it was a Class "D" security.

Section 37 was intended as something more than a right without a remedy, and if its plain meaning and purpose are not followed the remedy is practically destroyed. The law is a wholesome and necessary one. One who sells securities in this State is bound to know the nature of the same and that he is acting within the law when he sells them; and when his right to sell the securities is challenged he should have no trouble, if he has acted within the law, to justify the sale.

The correct procedure under section 37 is reasonably clear. As we have heretofore stated, a defendant, by his pleas and affidavit of merits, must set up a good defense to the plaintiff's cause of action, as alleged. (See *Jochum v. Ross & Co., supra.*) If a defendant in his plea and affidavit of merits denies that he made the sale in question, then the burden is upon the plaintiff to prove that the defendant did make the sale. If the defendant admits the sale of a security in Class "C" or Class "D," but avers that he

complied with the statute, then subsection 5 of section 37 affords a simple and easy method of proving compliance or noncompliance, as the case may be, with the provisions of the act; but if a defendant "relies for his defense upon any of the exemptions provided for in this act" and alleges that the securities sold were exempt, under some paragraph of section 4 or section 5, then the burden is upon him "to establish such exemption."

In the instant case, the affidavit of merits set up two defenses, 1, that the stock was "a 'Class A' security by reason of the fact that subsection Two of Section Four of 'The Illinois Securities Law,' in so far as it pertains to 'State Banks or Trust Companies of this State' is unconstitutional and void, being discriminatory and creating a special privilege and immunity denied to this defendant," and, 2, that in the transaction between plaintiff and defendant the latter was acting as agent for the former. At the outset of the trial counsel for defendant stated to the court that the first defense would not be urged, as the courts had held against it, and that "our chief defense, however, is that this was a sale through an agent." The constitutional question is not urged here. In any event, "by bringing this case to this court, the appellant waived all questions as to the constitutionality of the act. (See *Armour & Co. v. Industrial Board,* 275 Ill. 328, 335.)" (*People ex rel. Nelson v. Citizens Trust & Savings Bank,* 272 Ill. App. 444, 450.) The sole evidence presented by defendant relates to the second defense. Defendant's theory of fact was that it did not sell to plaintiff the certificates of stock in question, that plaintiff asked defendant to purchase the stock for him, that it had no Bank of the United States stock in its possession at the time plaintiff requested it to purchase the stock, that it merely complied with

plaintiff's request to procure the stock for him and that it was acting as agent for plaintiff in securing the stock for him, and that under such a state of facts it was not liable to plaintiff under the act. Plaintiff's theory of fact was that defendant was a specialist in buying and selling bank stock, that it solicited him to make the purchase in question, and that the transaction constituted a sale by defendant to plaintiff. Neither at the close of plaintiff's evidence nor at the close of all the evidence did defendant move for a verdict in its favor, but at the conclusion of the evidence it requested the court to hold, as a proposition of *fact,* the following: ''(8) The defendant Otte & Co., a corporation, asks the court to find as a matter of fact that in the transactions between the defendant, Otte & Co., a corporation, and the plaintiff, John H. Taft, on the fifth, sixth and seventh days of November, A. D. 1929, and in the transactions between the aforesaid parties on the twenty-first, twenty-second and twenty-sixth days of November, A. D. 1929, the defendant, Otte & Co., a corporation, acted for and in behalf of the plaintiff, John H. Taft, as his agent in negotiating the purchase of the shares of stock of the Bank of the United States on the above dates.'' Defendant now contends that the trial court erred in refusing to hold the above proposition. It is a sufficient answer to this contention to say that after a careful examination of all the evidence bearing upon the above proposition we are satisfied that the action of the trial court was right. Plaintiff strenuously contends that even if it could be held, as a matter of fact, that defendant acted merely as plaintiff's agent in the transaction, nevertheless, ''under the provisions of the Illinois Securities Law, the defendant, having participated in the sale of an unqualified and non-exempt security either as agent, broker or dealer, is liable for the money paid to it by the plaintiff, and the trial court

properly refused to hold defendant's proposition of fact No. 8. *Trakas v. Cokins,* 224 Ill. App. 327, 330. Smith-Hurd's Ill. Rev. Statutes, Chap. 121½, Sections 2, 3, 4, 5, 6, 7, 8, 29 and 37. *People v. Curtis,* 233 Ill. App. 13, 17, 18. *People v. Gillett,* 243 Ill. App. 41, 47. *Kneeland v. Emerton,* 183 N. E. 155, 159.'' While there appears to be merit in plaintiff's contention, it is unnecessary for us to pass upon the same.

By anything that we have said in this opinion we do not wish to be understood as intimating that subsection 2 does not apply in the trial of a criminal case. Nor have we found it necessary, in the determination of this writ of error, to pass upon the contention that the act is a penal statute and that plaintiff was therefore obliged to prove his case by more than a preponderance of the evidence.

Finding no merit in this writ of error, the judgment of the municipal court of Chicago will be affirmed.

*Affirmed.*

Sullivan, P. J., and Gridley, J., concur.